[Civ. No. 6646.    Third Dist.    Dec. 29, 1941.]

NINA FALK, Respondent, v. CHARLES C. FALK, Appellant.

Hill & Hill, H. L. Preston and Harry W. Falk, Jr., for Appellant.

Edwin V. McKenzie and Frank J. Mahoney for Respondent.

THE COURT.—The defendant has appealed from that portion of a decree of divorce which awards one-half of the community property to the plaintiff. She was granted a divorce on the grounds of extreme cruelty and adultery. That portion of the decree is not challenged.

The appellant contends there is no community property subject to distribution for the reason that the overhead expenses of conducting defendant's profession and business, together with the cost of living, consumed all the funds from which the determined community stocks, bonds and securities were deemed to have been purchased. It is therefore asserted the findings and judgment to the effect that certain properties are community in nature, one-half of which were distributed to the plaintiff, are not supported by the evidence.

This is one of three separate appeals growing out of the same divorce action. They were presented to this court at the same hearing, although they were not consolidated. One appeal was taken by the defendant from an order awarding plaintiff costs and alimony *pendente lite*. The plaintiff perfected the second appeal from that portion of the interlocutory decree which, after specifically finding that thirty-one items of described stocks, bonds and securities were purchased after the marriage with commingled funds received from the defendant's practice of his profession of medicine and from the proceeds and income from sales of his separate property, rendering it impossible to trace the source from which the securities were purchased, the court, nevertheless, erroneously distributed a large number of such securities to the defendant

as his separate property. In an opinion this day filed in that appeal, 3 Civil Number 6645 (*ante*, p. 762 [120 Pac. (2d) 714]), to which reference is made for a more detailed statement of the facts of this case, that portion of the judgment was reversed. In that appeal it was held the court erred in awarding any of said thirty-one items of stocks and securities to the defendant as his separate property. The principle of law upon which that conclusion was reached, based on the presumption that all property purchased after the marriage is community property, is applicable on this appeal.

We are of the opinion the findings and judgment with respect to the character of said thirty-one items of stocks, bonds and securities as community property, are adequately supported by the evidence. The record clearly indicates that the defendant maintained bank accounts, after his marriage with the plaintiff, into which he deposited and commingled indiscriminately the proceeds derived from his business and profession as a physician with funds acquired from sales of and income from stocks, bonds and securities owned by him before his marriage, so that it was impossible to trace the sources of funds from which such properties were purchased. The defendant testified in that regard:

"Q. Are you able to tell today in which banks or what portion of the deposits in each bank was from your professional income? A. No. Q. Is there any record you have which would show that? A. All I have is my deposit book. Q. But does that show what portion of each deposit was your professional income and what portion was profit from stocks and bonds? A. No. Q. Now in these two bank accounts you deposited all your profits from sale of securities, did you not? A. I deposited all the money that I received. Q. From any source? A. From every source. . . . Q. Now in depositing money in your bank account, or bank accounts, did you ever segregate any of those moneys? A. No. Q. So that profits from your stocks and bonds, and the income from your professional services, the profits or proceeds from your split products or timber ventures, and from whatever other ventures you received any money from was deposited in one or the other of the bank accounts without discrimination? A. Yes. . . . Q. Can you tell us what property you have today was bought from money drawn from that bank account in the Bank of Eureka? A. What property was

bought? Q. Yes, of any kind, personal or real. A. No, I can't tell what was bought.''

Mr. E. Ray Horton testified in behalf of the defendant. He is a public accountant who prepared from the defendant's records a statement of his properties and income, a memorandum of which appears in the appendix to appellant's opening brief. He said in regard to the commingled funds, in response to interrogatories:

''Q. These records are not such that any person can determine what portion of the money taken from the bank to buy securities or what portion of the money taken from the safe deposit box or any other sources to buy securities was community earnings or what portion was separate earnings of Dr. Falk? A. That's true. Q. And that is absolutely impossible for anybody to determine that from the record Dr. Falk has? A. That's right. . . . Q. What was that total gross professional income for that period [from September 15, 1915, to October 31, 1937, the period during which marital relations existed]? A. $263,425.21. Q. What was the total professional expense for that period? A. $102,079.07.''

The appellant argues that the report of the accountant, Mr. Horton, which was prepared from records, books of accounts, deeds, notes, cancelled checks and tax returns, establishes the fact that the thirty-one items of stocks, bonds and securities which were purchased after the marriage, were defendant's separate property. We think not. The most that may reasonably be said of that report is that it creates a conflict of evidence in some respects. It will be observed that Mr. Horton testified, in effect, that the funds which were deposited in the bank accounts and in the safe deposit box, were commingled so as to render it impossible to determine what portion thereof was derived from separate property or from community earnings. It also appears that, in estimating the aggregate income from the defendant's professional services as a physician during the period of the marital status, which he said amounted to $263,425.21, he did take into account his overhead expenses for that period amounting to $102,079.07. That would leave a net income from that source of $161,-346.14, which would be deemed to be community funds. There is also evidence indicating the approximate cost of living expenses during that period.

It is true that the presumption that said thirty-one

items of stocks, bonds and securities which were purchased after the marriage, under the provisions of section 164 of the Civil Code would be overcome and dispelled by evidence that specific property was actually purchased from defendant's separate funds. But, in the present case, the evidence fails to show that any specific item of said securities was purchased from identified separate funds. The court found that all of said securities were purchased from commingled funds which renders it impossible to determine which, if any, of them were purchased with separate funds. Therefore, under the well-established rule announced in an opinion in the plaintiff's separate appeal, 3 Civil Number 6645, *supra,* all of those securities must be deemed to be community property.

But, in conflict with the specific findings which were adopted by the court upon that particular issue, it is pointed out that the language of the trial court which appears in two memorandum opinions which were filed prior to the adoption of the findings, indicates the trial judge was convinced that "a large part of defendant's present assets can be fairly attributed to or traced from his separate estate." He so stated in his first memorandum opinion which appears at page 1 of the appendix to his opening brief. He also states therein that he has satisfactorily traced to defendant's separate property funds invested in property acquired after the marriage of the aggregate value of $60,000. But, it will be observed, none of that so-called separate property is identified. The judge does not even say that it is personal property. No findings were adopted in accordance with that declaration. That memorandum opinion was subsequently recalled. The case was opened for further argument. In a later memorandum opinion the judge reiterates substantially the same statement, but he does say, "I was and am convinced that about $60,000.00 or $70,000.00 of the assets listed in this action are the product of the community earnings and income, while the balance is the result of the separate estate which defendant had at the time of the marriage." This would seem to refute appellant's contention that there is no community property subject to distribution. Moreover, the conviction of the trial judge, as expressed in the memorandum opinions to the effect that he believed the funds with which certain properties were purchased after the marriage could be satisfactorily traced to the proceeds from sales of his separate property was certainly changed and abandoned,

for he subsequently adopted specific findings to the contrary. We assume that the judge changed his mind in that regard.

There is a conflict between the statements of the trial judge in his former memorandum opinions, and in his subsequent adopted findings, with respect to the subject of community property. We must therefore disregard the opinions, which are no part of the record on appeal, and be governed by the findings which were adopted. The findings are controlling in that regard. (*Cavagnaro* v. *Delmas*, 29 Cal. App. (2d) 352 [84 Pac. (2d) 274]; *Wittman* v. *Wittman*, 32 Cal. App. (2d) 184 [89 Pac. (2d) 419]; 2 Cal. Jur. 488, sec. 235.)

The appellant claims that the court erred in finding that one-half interest in 160 acres of land, referred to as the "Willow Creek Timber Claim," which was conveyed to the defendant by his son after the marriage, is community property. The evidence shows that interest in the land was deeded to the son of the defendant by his mother, who was the defendant's former wife. The defendant testified in effect that his son conveyed his one-half interest in that land to him after his marriage to the plaintiff in consideration of his payment of the cost incurred for his education in school and in college between the years 1915 and 1930. The defendant said in that regard:

"Q. Now Doctor, you stated at the last hearing that certain property had been deeded to you by your son in repayment for money loaned to him to finance his college education. Where was that property situated? . . . A. Near the Willow Creek section. Q. Timber land? A. Timber land, yes. Q. And when did you finance your son going to college, during what year? A. Between 1915 and 1930. Q. It was advanced during the time he was going to school? A. Yes. . . . Q. Do you know how much the money was, the total? A. A great deal more than the timber claim was worth, . . . He just volunteered to do it if I would let him have the money when he got it. . . . He said this property was a liability to him and not an asset and he would deed it to me and in recognition of the large amount of money that I would have to give him to go to college."

The foregoing evidence is sufficient to warrant the court in determining that the one-half interest in the Willow Creek Timber Claim was not a gift from the son to defendant so as to constitute separate property under section 163 of the Civil Code, but on the contrary that the defendant secured title thereto in consideration of payment of all expenses for

his son's education, which cost more than the value of the land. These payments were made after the marriage from commingled community funds. This supports the trial court's finding that this interest in the land became community property.

The appellant contends that the court erred in finding that the home property in Eureka is community property. It is asserted this home was purchased "chiefly through the sale of Liberty Bonds, four years after the marriage of said parties." That furnishes no evidence in conflict with the finding of the court in that regard. The home is designated as Tract Number 22. That was purchased after the marriage on July 22, 1919. If the home was paid for with Liberty Bonds, we may assume they were purchased with community funds after the marriage. Liberty Bonds were first issued in June, 1917. That is nearly two years after the marriage. We must presume they were purchased with community funds. That fact is sufficient to support the court's finding in that regard.

The findings of the court with respect to the character of many other specific parcels of real property and designated items of personal property are likewise challenged. It would be an idle and arduous task to attempt to analyze the evidence regarding each of these numerous assignments of error. We have examined each of them. Frequently, evidence is summarized which is deemed to refute certain findings of the court, without directing us to pages of the transcript where such evidence may be found. In some instances there seems to be a conflict of evidence. We may say that we have found no satisfactory evidence that any of the challenged findings of the court are unsupported by substantial proof. As we read the lengthy and involved record in this case, we are impressed with the fact that the defendant received very fair treatment at the hands of the court and that he was awarded his full share of the property.

That portion of the judgment from which this appeal was taken is affirmed, subject to the modification directed to be made in the opinion which was this day filed in plaintiff's appeal in 3 Civil Number 6645.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1942. Carter, J., voted for a hearing.