[S. F. No. 3653. Department Two.—January 3, 1905.]

In the Matter of the Estate of THOMAS BELL, Deceased. TERESA BELL, Special Administratrix, Appellant, v. LOUISA J. THOMPSON, as Trustee, etc., et al., Creditors of Estate, Respondents.

ESTATES OF DECEASED PERSONS—ACCOUNT OF SPECIAL ADMINISTRATRIX —COMMISSIONS PAID REAL-ESTATE AGENT—UNAUTHORIZED EXPENDITURES—BENEFIT OF ESTATE.—The court in settling the account of a special administratrix properly disallowed expenses incurred in employing real-estate agents to sell the property of another estate, from the sale of which the estate was benefited by the payment in full of a claim in favor of the deceased against such other estate. The fact that the expenditure was made in good faith, and for the benefit and preservation of the estate, cannot justify an expenditure not authorized by law.

ID.—CONSTRUCTION OF CODE—EXPENSES INCURRED IN PERFORMANCE OF TRUST FOR BENEFIT OF ESTATE.—The repayment out of trust property for expenses incurred in the performance of the trust for the actual benefit of the estate, provided for in section 2273 of the Civil Code, has no application to executors, administrators, or guardians, who are excluded from the provisions of the chapter concerning express trusts by the terms of section 2250 of that code.

ID.—SALE OF MINING STOCK—EXPENSES FOR EXAMINATION AND REPORT UPON MINE.—A special administratrix has no power as such to sell mining stock, and expenses incurred by her in the employment of an expert to examine and report upon the condition of the mine were properly rejected, and cannot be justified as an effort to determine the value of stock held by another estate against which a claim was held by the estate of which she was special administratrix.

ID.—EXPENSES PAID DETECTIVE AGENCY—WATCHING OFFICE OF REMOVED EXECUTORS.—An item in the account for expenses paid to a detective agency for watching the office of former executors, who had been removed, on the ground that the special administratrix believed them to be criminals, cannot be said to have been improperly rejected where it is not shown that either of them ever endeavored to conceal or make away with any of the papers belonging to the estate, but it appeared that they had given up all of the papers called for.

ID.—EXPENSES OF REMOVING EXECUTOR.—Items in the account of the special administratrix for costs and expenses incurred in the removal of an executor, prosecuted by her as widow and heir of the deceased, and as a creditor of his estate, were properly rejected.

It matters not that the proceeding was beneficial to the estate. The attorneys' fees, costs, and expenses are chargeable, not to the estate, but solely to the heir or creditor who prosecutes the proceeding.

ID.—EXPENSE FOR ENGROSSING BILL OF EXCEPTIONS—DUTY OF ATTORNEY.—It is the legal duty of the attorney employed by the special administratrix to defend a litigation to engross a bill of exceptions in the case, and an item for expense paid to a clerk in his office for engrossing the bill cannot be allowed in the account of the special administratrix.

ID.—ITEMS OF CREDIT GROWING OUT OF DISALLOWANCE—MODIFICATION OF SETTLED ACCOUNT—COSTS.—Items of credit to which the special administratrix was entitled in connection with the disallowance of moneys paid to real-estate agents and to a mining expert, and which the court below would have corrected upon proper application, will be allowed as a modification of the settled account, without costs.

APPEAL from an order of the Superior Court of the City and County of San Francisco settling the final account of a special administratrix. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

T. Z. Blakeman, for Appellant.

Drown, Leicester & Drown, for Respondents.

HENSHAW, J.—This is an appeal by the special administratrix from the order of court settling her final account as special administratrix and refusing to allow certain expenditures charged therein.

1. The court refused to allow certain items charged as expenditures in the matter of the collection of the claims of the Bell estate from the estate of Robinson. The circumstances briefly were these: L. L. Robinson had executed his promissory note to Thomas Bell in his lifetime for the sum of twenty-nine thousand dollars. This note Bell had deposited with the Bank of California as security for debts owing by him. The Bell estate had a separate claim against the Robinson estate for $1,287. Upon both of these claims there was accumulated interest. The Robinson note having been given to the Bank of California as security for the debt of Bell, it is apparent

that it was to the interest of the estate of Bell to realize as much as possible upon that note, since for any deficiency the estate of Bell was responsible over to the bank. The principal asset of the estate of Robinson was the Los Medanos Rancho, in Contra Costa County, which was heavily encumbered by mortgage. It was important to secure a purchaser who would pay such price for the ranch as to leave sufficient funds over for the liquidation of the claims of the Bank of California and of the estate of Bell. Mr. Blakeman, the attorney for the special administratrix herein, had himself substituted as attorney for the Bank of California and as its attorney undertook the collection of the claims. The result was, that the rancho was sold for money enough to pay the claims of the bank and of the Bell estate in full. Mr. Blakeman testified that he proceeded to sell the Robinson rancho just the same as an owner would do, and for that purpose had to and did employ real-estate agents and agents to get special information, to search out prospective purchasers, to make maps and the like. The payments for these purposes are the ones which the court refused to allow in settling this account. The court found, it should be added, that the special administratrix in incurring the expenditures and in paying these sums acted in good faith and in accordance with what she believed to be the best interests of the estate of Bell, and believed the expenses to be necessary expenses in connection with her proceedings to collect and preserve the assets of the estate of Bell and to collect the claims of the estate of Bell against the estate of Robinson. Notwithstanding the benefits which accrued to the estate of Bell, the court properly refused to allow these expenditures. They were not lawful expenditures for the special administratrix to make, and the court in probate well summed up the matter when it said: "The special administratrix of the estate of Bell had no authority derivable from the statutes of this state to engage in contracts with real-estate or other agents for the payment from the funds in her charge of commissions on sales made of property belonging to the estate of Robinson." The matter of these expenditures is rigidly and properly governed by the express language of the codes, and to say in this or in any case that an expenditure not authorized by the law as necessary for the preservation of the estate, could be allowed be-

cause made in good faith, or because benefit resulted to the estate from it, would be not only to subvert the law, but it would substitute for the wise rule which the law has laid down the judgment, caprice, or whim of the court in probate.

Nor can these claims be countenanced and allowed, as appellant seeks to have them, under section 2273 of the Civil Code. That section provides that "A trustee is entitled to the repayment, out of the trust property, of all expenses actually and properly incurred by him in the performance of his trust. He is entitled to the repayment of even unlawful expenditures, if they were productive of actual benefit to the estate." This, it is true, is the express rule of law made applicable to trustees generally, but the foundation of appellant's argument—namely, that a special administratrix, being a trustee, comes within the provisions of the section—is completely overthrown by section 2250 of the Civil Code, which, being a part of the same chapter as the section above quoted, declares: "The provisions of this chapter apply only to express trusts, created for the benefit of another than the trustor, and in which the title to the trust property is vested in the trustee; not including, however, those of executors, administrators, and guardians, as such." We have not considered it necessary to discuss separately each of the items growing out of the transactions of the Robinson estate which the court rejected. From what has been said it is plain that one and all they were properly disallowed.

2. The estate of Thomas Bell owned shares of stock in the North Bloomfield Mine. The special administratrix employed a Mr. Gassaway to examine and report upon the condition of the mine. He did so, and she paid him $565. The Robinson estate also owned stock in the North Bloomfield Mine. The expenditure is justified by the special administratrix upon the ground that it was her duty to inform herself of the value of the stock "because she was pushing the Robinson estate stock to sale, and there were parties seeking to purchase the Bell estate stock." This item was likewise properly rejected. It was no part of the duty of the special administratrix, nor, indeed, was it within her power as special administratrix to sell this property. Her duty, so far as the Bell estate was concerned, was to preserve it, and, for the reasons heretofore given, the expenditure was not authorized as being an

effort to determine the value of the stock of the Robinson estate.

3. The court refused to allow an item of $120 paid to a detective agency for services in watching the office occupied by Mr. Staacke and Mr. Maxwell, the former executors of the will of Bell, who had been removed at the suit of Mrs. Bell. The special administratrix testified that Staacke and Maxwell had not yet turned over all the papers to her, and that she believed that they were criminals, but she failed to cite any instance in which either of them ever endeavored to conceal or make away with any of the papers, and the utmost shown in this regard was, that certain letters addressed to George Staacke, and relating to some of the property in which the Bell estate was interested, were handed to one of the detectives by Mr. Maxwell when demand was made. She admitted that Mr. Staacke had readily given her all of the papers that she called for, and that he never refused to produce any paper when asked. In this state of the evidence it cannot be said that the court was not justified in refusing to allow this item as a necessary or proper expenditure.

4. In her account as special administratrix Mrs. Bell charged the estate with expenditures incurred by her in her successful efforts to remove the executor George Staacke from office. The amount so charged was $12.50 by way of taxable costs, and more than $500 for expenses in no sense taxable as costs, and consisting of $220 paid to a bookkeeper for examining the books of the executor, $126.60 to the stenographic reporter of the court for transcribing notes of testimony, $55.80 paid H. S. Crocker & Co. for printing briefs and the oral argument in the supreme court. These items were one and all properly rejected. Mrs. Bell's action for the removal of the executor was prosecuted by her "as the widow and an heir of the said deceased, and as a creditor of his estate." It matters not that the effect of the proceeding was beneficial to the estate. The attorneys' fees, costs, and expenses are chargeable to the heir or creditor who prosecutes the proceeding. Says Woerner (2 Woerner on Administration, sec. 516): "Nor are the fees of an attorney employed by the heirs, or a portion of them, to contest the settlement, or hasten the administration; nor can the estate be charged with any part of the fees of an attorney who is employed by one of the creditors or bene-

ficiaries, though thereby a fund is realized which is distributable among all the creditors or beneficiaries.'' The heir or legatee seeking the removal of an executor has no power to deal with and no control over the assets of the estate, and cannot make contracts which in any way will bind the estate, nor can the fact that such heir afterwards becomes special administratrix justify the payment out of the assets of the estate of any such item of expense.

5. The suit of John S. Bell *v.* Staacke was defended by the special administratrix. She employed Mr. Blakeman as her attorney, and the court allowed him fees as such attorney. It refused, however, to allow an item of sixty-nine dollars paid to Mr. Worley for engrossing the bill of exceptions in that case. Mr. Worley was a clerk in the office of Mr. Blakeman; but it is said that the evidence shows that the attorney for the administratrix was much pressed for time in preparing the bill of exceptions, that Mr. Worley was compelled to work beyond office hours, and that, as the fees allowed the attorney for his services were exceedingly small, they should be construed to include nothing but strict legal services. But the answer to this is, that it is the duty of the attorney to engross, or cause to be engrossed, the bill of exceptions, and in this sense it is a part of the strict legal duty of the attorney. A special remuneration to his clerk is no more a legal charge against the estate for such services than would be a claim for his salary during the time that he was actually employed upon the work.

In appellant's reply brief she makes mention of the fact that the court in disallowing the item of one thousand dollars paid to Baldwin & Howell as real-estate agents in and about the sale of the Robinson ranch failed to credit her back with $107.45 and $87.79 with which she had charged herself, and which moneys were paid to her by other creditors of the estate of Robinson as their proportionate shares of the one-thousand-dollar commission which she had paid to Baldwin & Howell, and, again, that in disallowing the amount paid to Gassaway for his report upon the North Bloomfield Mine, the court failed to allow her the item of $150, for which she had sold a copy of the Gassaway report, and with which she charged herself. It is manifest that these were errors of inadvertence by the trial court, and would at once have been corrected

upon application to it. It follows, therefore, that the order of the court should be modified as to these items in the respects indicated, and that in all other respects the order stands affirmed, and, as these errors of inadvertence should in the first instance have been called to the attention of the court in probate, appellant, upon this modification, should not be allowed to recover her costs. It is ordered accordingly.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.