[Civ. No. 11273.  First Appellate District, Division 1.—December 30, 1940.]

LEONORA WALLACE, Appellant, v. ANDREW KERR et al., Respondents.

Carlton D. Dethlefsen for Appellant.

Athearn, Chandler & Farmer, William Penn Humphreys and Leigh Athearn for Respondents.

KNIGHT, J.—This is an appeal from a judgment for defendants entered pursuant to an order granting a motion for nonsuit in an action for the recovery of damages. We are of the opinion that plaintiff failed to establish a case which would have sustained a judgment in her favor, and therefore that the trial court was justified in granting the nonsuit.

The amended complaint upon which the cause went to trial was entitled ''Amended Complaint for Conspiracy''. In the first paragraph it was alleged that the defendants ''maliciously conspired together for the purpose of defaming and destroying the good name and reputation of the plaintiff and to injure her reputation as a mother for the purpose of destroying the affection and regard of plaintiff's daughter, Louise Elizabeth Kerr, for her mother, the plaintiff herein''. Then followed a narration of certain statements and acts plaintiff alleged were made and committed by defendants in furtherance of the alleged conspiracy; and in the final paragraph of said complaint it was alleged: ''That said acts . . . and said statements . . . have injured said plaintiff in her health and reputation and have further deprived her of the love, affection and companionship'' of her daughter, to plaintiff's damage in the sum of $100,000. The parties sued were Andrew Kerr, plaintiff's former husband and the father of Louise; Kerr's present wife, Mathilda, sued herein as Tillie Kerr; Adelaide Brown, plaintiff's sister; and Dennis Pickens,

a friend of Louise. The statements and acts plaintiff alleged were made and committed by the defendants in furtherance of the alleged conspiracy were in substance that they told Louise that her mother was not a fit and proper person to have her custody; that plaintiff was insane and crazy, and that they advised Louise to leave plaintiff; that Adelaide Brown in the presence of Louise threatened to "railroad" plaintiff into an insane asylum if she sought to restrain her daughter; that Andrew Kerr made a similar statement to plaintiff; that he sent Louise transportation fare to come from New York to San Francisco by airplane to institute certain proceedings for the appointment of a guardian, and that he furnished the money to maintain said proceedings.

At the time the original complaint was filed Louise was past eighteen years of age; and the background of the litigation, as it appears from the record, may be stated as follows: In September, 1923, plaintiff obtained an interlocutory decree of divorce from Kerr. She was awarded the care, custody and control of Louise, who was then about five years old, and Kerr was ordered to pay to plaintiff the sum of $75 a month for the support, maintenance and education of Louise. The provisions of the final decree were in conformity with those of the interlocutory decree, and Louise remained under plaintiff's care and custody until the early part of January, 1937, when she petitioned the superior court for the appointment of a guardian of her person, whom she nominated. Plaintiff filed objections to the granting of the petition, and appeared at the hearing in person and by attorney; and on April 21, 1937, Mrs. Mary C. Kohler, the ward's nominee, was appointed guardian. Plaintiff appealed, but on November 30, 1938, the trial court's order was affirmed. (*In re Kerr*, 29 Cal. App. (2d) 439 [85 Pac. (2d) 145].) Meanwhile, between the date of the filing of the petition for the appointment of a guardian and the making of the order granting the same, to wit, on April 5, 1937, appellant brought the present action. On November 29, 1937, the amended complaint was filed; the trial of the action began on October 10, 1938, and the nonsuit was granted on October 17, 1938, which it will be noted was approximately six weeks prior to the affirmance of the order appointing Mrs. Kohler as guardian.

It is well settled that a conspiracy cannot be made the subject of a civil action unless something is done which with-

out the conspiracy would give a right of action. The damage is the gist of the action, not the conspiracy. (*Bowman* v. *Wohlke,* 166 Cal. 121 [135 Pac. 37, Ann. Cas. 1915B, 1011]; *More* v. *Finger,* 128 Cal. 313 [60 Pac. 933].) It is the wrong done and the damage suffered pursuant to the conspiracy which is the cause of action, rather than the conspiracy itself. (*Rapaport* v. *Forer,* 20 Cal. App. (2d) 271 [66 Pac. (2d) 1242].) In other words, as stated in *Mox, Inc.,* v. *Woods,* 202 Cal. 675 [262 Pac. 302]: "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. The cause of action is the damage suffered. 'It is a general and well settled principle of law that, where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action.' " (Citing *Herron* v. *Hughes,* 25 Cal. 555; *Davitt* v. *American Bakers' Union,* 124 Cal. 99 [56 Pac. 775]; *Dowdell* v. *Carpy,* 129 Cal. 168 [61 Pac. 948]; *Menner* v. *Slater,* 148 Cal. 284 [83 Pac. 35]; see, also, *Revert* v. *Hesse,* 184 Cal. 295 [193 Pac. 943]; *Burckhardt* v. *Woods,* 124 Cal. App. 345 [12 Pac. (2d) 482].)

■ In the present case plaintiff at the time of the hearing of the demurrers, and throughout the trial of the cause and on this appeal, has taken the positive position that the action is not one for slander, nor one for alienation of affections, and therefore that no recovery could be had on either of those theories; but it is contended that it is an action "for damages against members of a conspiracy for a malicious wrong". The single authority cited therefor is *Mangum Elec. Co.* v. *Border,* 101 Okl. 64 [222 Pac. 1002]. An examination of that case would seem to show that it is essentially different from the present one; but even though it be held that the law of this state recognizes the form of action there prosecuted, plaintiff has failed to point out, as required by the authorities above cited, what actionable wrong was committed by the defendants or any of them whereby she was injured. Obviously the injury could not be the loss of the love, affection and companionship of her daughter, because they are the elements of an action for alienation of affection; nor could it be for injury to plaintiff's good name and reputation, because those are the elements of a cause of ac-

tion for slander; and as stated, plaintiff has strenuously insisted at all times that neither of those causes of action is here involved. It would appear, therefore, that the only injury about which plaintiff could complain resulted from the guardianship proceeding, which was not actionable, for admittedly it was instituted and maintained by her daughter in her own name, and whether she was aided or encouraged by any of the defendants so to do would seem to be immaterial, because being of the age of eighteen she was entitled to petition for and nominate her own guardian; and after a full hearing at which both parents were present and testified, the trial court found as alleged in her petition that it was for the best interests of the child that a guardian other than plaintiff be appointed for her; and the trial court's decision was upheld on appeal. Therefore, in view of the foregoing, it is apparent that even though testimony was given by plaintiff in support of the allegations made in her amended complaint as to the statements and acts made and committed by the defendants, a judgment for damages based thereon could not have been legally sustained.

During the course of the trial the court ruled that certain statements made by some of the defendants to plaintiff out of the presence of the other defendants were binding only on the defendants making the statements; and other declarations which plaintiff claims some of the defendants made to her were excluded entirely as hearsay. We find no error in any of the foregoing rulings; and in any event, the effect of such declarations and statements if admitted for all purposes would not have been legally sufficient to establish a case in favor of plaintiff under the theory under which it was brought and tried.

We are unable, however, to sustain that portion of the judgment awarding each of the defendants $100 attorneys' fees. In this connection the record shows that at the commencement of the trial, on motion of defendants, the court required plaintiff to post a bond upon the theory that the action was one for slander; but as stated, plaintiff has at all times insisted that it was not such an action, and the judge of another department of the same court so held at the time the demurrers were overruled, in denying defendants' motion to dismiss the action upon the ground that a bond had not been posted. Moreover, the order granting

the motion for nonsuit was not based upon the ground that the action was one for slander. Therefore, in that state of the record, we are of the opinion that the action cannot be treated as such for the purpose of exacting the payment of attorneys' fees.

In accordance with the views above expressed, it is ordered that the judgment be modified by striking therefrom the allowance for attorneys' fees, and as thus modified it will stand affirmed, respondents to recover costs.

Peters, P. J., and Ward, J., concurred.