[S. F. No. 16424.   In Bank.   Mar. 29, 1943.]

Guardianship of the Person and Estate of LILLIAN F. RUS-
SELL, an Incompetent Person.   GEORGE M. CLARK,
Appellant, v. KATHARINE RUSSELL BOSWORTH,
Respondent.

Morrison, Hohfeld, Foerster, Shuman & Clark for Appellant.

Linforth, Cannon & Miller, William C. Stein and Long & Levit for Respondent.

GIBSON, C. J.—This is an appeal from a judgment removing appellant as guardian of the person and estate of Lillian F. Russell. The petition for removal was filed by respondent. The court found, among other things, that appellant had mismanaged the estate and failed to perform his duties as guardian in violation of section 1580 of the Probate Code. Appellant contends the findings relating to mismanagement are not supported by the evidence and that the other findings do not sustain the conclusions of law and the judgment.

The incompetent is over eighty years of age and is now under the continual care of a doctor and nurses. She is unable to recognize people or to talk rationally and is confined to bed in a practically helpless condition. From 1918 until 1937 her property was managed by one Williams. On May 5, 1937, Mrs. Russell executed a deed conveying all her property, real and personal, to appellant in trust with power of sale to manage and control the trust estate and pay to her the income derived therefrom during her lifetime. The property was to revert to Mrs. Russell's estate upon the termination of the trust at her death. Appellant recorded the deed and demanded from Williams all property belonging to Mrs. Russell. Williams refused to comply unless he were furnished with the certificate of a physician that Mrs. Russell was competent at the time of the execution of the deed. On August 26, 1937, Mrs. Russell was adjudged incompetent and appellant was appointed guardian of her per-

son and estate. Williams then relinquished to appellant the control and management of the affairs of the incompetent. The petition to remove appellant as guardian, filed some eight months later, alleged among other things that Mrs. Russell was incompetent, to appellant's knowledge, when she executed the deed of trust and that the trust gave appellant an interest in the estate adverse to his duties as guardian, but that he nevertheless permitted the trust to remain a cloud upon the title of the property after his appointment as guardian. It was also alleged that he had mismanaged the estate and had negligently failed to rent certain real property belonging thereto. During the hearing the petition was amended to state that appellant had wilfully concealed from the court his possession of some jewelry and other articles belonging to the estate. It was further alleged that appellant was not a fit or proper person to remain guardian of the person of Mrs. Russell.

After this proceeding for removal was instituted the deed of trust was set aside in a suit brought by a guardian *ad litem* appointed for that purpose at the instance of appellant.

Some questions presented by the record which are argued at great length in the briefs will not be referred to here for the reason we do not consider their determination necessary to the disposition of this appeal. Our discussion will be limited to those findings of fact and conclusions of law which in our opinion sustain the decision of the trial court and require an affirmance of the judgment.

The trial court found that Mrs. Russell was incompetent when the deed of trust was executed and that appellant then knew or should have known this fact. Appellant does not challenge the sufficiency of the evidence to support these findings. Nor is it denied that he did not reveal to the court the existence of the deed of trust or make any effort to have it canceled until after the petition for removal was filed. It is contended by appellant, however, that these facts do not justify the removal of a guardian under section 1580 of the Probate Code. The trust deed, which had been recorded, constituted a cloud on the property and if valid would have placed the entire estate of the incompetent beyond the control and supervision of the court in the guardianship proceeding. It was the duty of appellant to have the

deed set aside and thereby clear the title to the property and prevent the development of any possible adverse interest which might arise by reason of his dual position as trustee under the deed of trust and guardian of the estate and person of the incompetent. The failure of appellant to correct this situation until after proceedings were instituted for his removal was a proper subject for consideration by the court in determining whether he had performed his duties as guardian. ■ Appellant claims the court erred in admitting evidence tending to show that he knew Mrs. Russell was incompetent when she executed the deed, and in support thereof cites authority to the effect that a guardian's unfitness may not be shown by his conduct prior to appointment. Evidence of facts antedating such appointment may be considered, however, in determining the propriety of appellant's conduct after appointment. (*Cf. Guardianship of Snowball,* 156 Cal. 240, 243 [104 P. 444]; 3 Schouler on Wills (6th ed. 1923), § 1881, pp. 1919-1920.)

■ The court also found: "As guardian of the estate of said incompetent, said Clark obtained possession of a large amount of jewelry, silverware, books and other articles belonging to his ward, and after his possession thereof was discovered, he filed an amended inventory in said estate, in which he included the said property as a part of the estate of said incompetent. In the inventory and appraisement first filed by him as such guardian he failed to include as a part of the estate of said incompetent the said jewelry, silverware, books and other articles belonging to his ward. In verifying said first inventory, said Clark stated, under oath, in substance and effect, that said inventory described all of the property of said incompetent which had come into his possession, whereas, in truth and in fact, as said Clark well knew, he had in his possession at the time of filing said inventory, all of said jewelry, silverware, books and other articles belonging to his ward. At the time of verifying said inventory said Clark knew that it did not contain or decribe all of the property of said incompetent which had come into his possession. His explanations for this failure were (1) that he thought he had told his attorneys that he had possession of this property, (2) that he did not think it was of sufficient value to require its inclusion in said inventory, and (3) that said property was like rings and other jewelry in the possession of the incompetent, and not required to be included. The

said jewelry, silverware, books and other articles are appraised at $330.18.'' Appellant does not claim that this finding is not supported by evidence but contends he failed to include the property in the first inventory by mistake and that since it was listed in a supplemental inventory no harm has resulted to the estate and therefore this does not constitute cause for removal. The court was surely justified, however, in considering the neglect of appellant to include this property in the inventory until the fact of such omission was developed at these proceedings, as an additional factor tending to show continued failure of appellant to perform his duties as guardian.

The court further found that appellant failed to use due diligence in leasing certain property, located in Stockton. Appellant contends this finding is not supported by the evidence. The property consisting of a two-story building had been leased for many years for $750 per month. The lease expired two months after appellant's appointment as guardian and although the income produced therefrom had been the principal source of revenue for the support of Mrs. Russell, the property remained vacant during the entire period appellant acted as guardian. Appellant, a mining engineer, maintained an office in San Francisco. He dealt with Stockton real estate brokers by letter and at times met them in San Francisco or Stockton. There is evidence that letters from agents stating they had clients interested in the property or requesting immediate information were left unanswered for two or three weeks. In some of these belated replies appellant stated he was busy and would be unable to see the agent in Stockton until a still later date. Some letters were never answered. Appellant insisted that all proposals be submitted directly to him and did not authorize anyone in Stockton to conduct negotiations for leasing the property. On one occasion an agent suggested that appellant contact a firm in San Francisco who had an interested client but appellant neglected to do so. He explained his failure to follow this lead by stating at the trial that he had told this agent and others ''they were not entitled to a commission for making suggestions . . . or giving me introductions to somebody; I wanted them to work out a deal.'' There was also some question whether appellant exercised good business judgment in managing this property. The evidence indicates that he may

have been demanding a higher rental than reasonably could be expected for the property unless the building was remodeled or divided into smaller stores, which he refused to do without first obtaining a tenant. Appellant rejected the proposal of one agent who produced tenants agreeing to take one-third of the building, if remodeled, for $300 per month. On another occasion he refused a plan to divide the building into four stores even if tenants were provided for two of them. While appellant urges that the financial condition of the estate would not have permitted remodeling, he testified that the necessary funds were available after certain assets of the estate had been sold. There was, of course, other evidence indicating appellant had been diligent in his efforts to lease the property and that his failure to do so was due to circumstances over which he had no control. This conflict presented a question of fact for the trial court to decide and we cannot say the finding of the court is without substantial support.

We are satisfied that the evidence and findings as a whole are sufficient to support the trial court's conclusion that appellant was guilty of mismanagement and continued failure to perform his duties within the meaning of section 1580 of the Probate Code. ■ The Probate Court retains a continuing, supervisory jurisdiction over the affairs of the estate and the guardian's handling thereof, and the removal of a guardian for the reasons specified in the code rests within the broad discretion of that court. (*Guardianship of Whittaker,* 19 Cal. App.2d 373 [65 P.2d 373]; cf. *Guardianship of Howard,* 218 Cal. 607 [24 P.2d 486].)

■ In determining that appellant should be removed as guardian of the person of the incompetent the court concluded that the incompetent required "the personal attention of someone who can render for her such delicate and disinterested services as could not be rendered by [appellant], and that such person should be someone disinterested in her property, and not likely to become involved in litigation over her estate." It was for the trial court to determine the incompetent's requirements, and under all the circumstances, including the reasons for which appellant was removed as guardian of the estate, we cannot say that it erred.

The judgment is affirmed, respondent to recover costs of appeal payable out of the Estate of Lillian F. Russell.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Griffin, J. pro tem, concurred.

Reporter's note: On April 27, 1943, the judgment was modified to read as above.