[Civ. No. 14917.    Second Dist., Div. Two.    Oct. 29, 1945.]

BYRON PEEBLER et al., Respondents, v. B. C. OLDS et al.,
Appellants.

J. M. Danziger, in pro. per., for Appellants.

Roland Maxwell for Respondents.

MOORE, P. J.—From only that portion of the judgment assessing special damages resulting from the wrongful prosecution of civil suits, defendants appeal. They maintain that there is not sufficient proof of malice, of want of probable cause or of the special damages.

The facts undisputedly alleged and found are as follows: About 1923 plaintiffs and defendant Olds formed a partnership which owned and operated a cemetery known as the Olive Lawn Memorial Park on five acres which will be here-

inafter referred to as "Memorial Park." In 1932 they drilled a well to provide water for their cemetery but inadvertently it was located about four feet north of the northerly boundary line of their property. The partnership was dissolved on March 20, 1940. But just prior to such dissolution defendants incorporated the Olive Lawn Cemetery, defendant herein, for the purpose of defrauding the partnership of its cemetery business or of destroying it. To this end they appropriated for defendant corporation a name composed of the distinctive words of the partnership name and acquired the lands, hereinafter referred to as "parcel B," lying to the north of and adjacent to Memorial Park, knowing that it contained the well theretofore mistakenly drilled off their land by the partnership. After dividing parcel B into cemetery lots defendants took possession of Memorial Park and made use of it to promote sales of grave places upon their own land.

Some differences among the partners having arisen out of the dissolution of the partnership, pursuant to the agreement creating it arbiters were appointed and a hearing was conducted on June 20, 1940. Their findings and award were filed in the superior court and on motion of the Peeblers judgment thereon was entered on February 20, 1942. Appeal therefrom, taken by defendant Olds, was affirmed December 8, 1942. By such judgment one H. M. Head was appointed commissioner to sell the assets of the partnership at public auction. Pursuant thereto, after one unsuccessful effort, he sold Memorial Park to respondents who have continuously owned the five acres. While it is not disclosed by the findings it appears from the "settled statement" that appellant Edith Danziger purchased the small office at the sale.

Following the entry of the judgment on the arbitration award four actions and one proceeding were instituted by defendants in all of which defendant Danziger acted as their attorney, as follows: (1) Graceland, a corporation v. Byron Peebler, Ethel Peebler, B. C. Olds and Belle Utterbach, doing business under the name of Olive Lawn Memorial Park. This action filed October 30, 1940, was brought to quiet title of the Graceland corporation in and to the same five acres theretofore sold to respondents by Commissioner Head. Judgment on the pleadings was awarded to the defendants and became final March 18, 1942. (2) Mahurin v. Byron Peebler, Ethel Peebler and B. C. Olds, a partnership doing business as Olive Lawn Memorial Park, filed October 30,

1940. This was an action to recover damages and to impress a lien on Memorial Park. A trial on May 2, 1941, resulted in a judgment in favor of the defendants therein which judgment became final upon the abandonment of his appeal by Mahurin. (3) B. C. Olds v. Byron Peebler, Ethel Peebler and H. M. Head. This action was filed September 11, 1942, for alleged damages and for fraudulent conspiracy of the defendants in connection with the unsuccessful judicial sale of the partnership property under the arbitration judgment. A demurrer having been sustained without leave to amend, final judgment was entered on February 18, 1943. (4) Olds v. Byron Peebler and Ethel Peebler. This action, filed May 26, 1943, was for damages alleged to have been caused by the named defendants in connection with the sale of the property under the arbitration judgment. It was evidently intended to cover the same matters embraced in the lawsuit mentioned in item (3) above. It is now pending in the superior court. (5) On the same day defendant Danziger as president and attorney filed a voluntary petition in bankruptcy on behalf of the Graceland corporation in the United States District Court. He listed as the sole asset of the bankrupt the five acres comprising Memorial Park, the property of plaintiffs. In addition to the foregoing actions and proceeding, defendant Olds, acting through J. M. Danziger as his attorney, filed his petition for a writ of supersedeas to stay all proceedings in an injunction action which these respondents had filed against Olds, Andrews and J. M. Danziger in March 1942. Such petition was denied.

In response to the allegation of the malice of defendants herein the court below found (a) that Graceland's charter had been suspended many years prior to the filing of the bankruptcy petition and that it had owned no interest in Memorial Park since November 9, 1926; (b) that the filing of the bankruptcy petition was only a part of the general program of defendants to involve Memorial Park in litigation for the purpose of depriving plaintiffs of ownership thereof; (c) that all defendants were participants in the plan and conspiracy to deprive plaintiffs and other lot owners in their cemetery of having it known by its true name, "Olive Lawn Memorial Park"; (d) that all claims of defendants to Memorial Park are entirely fictitious and have been asserted with the sole object of depriving plaintiffs of their property

which they had acquired by purchase at the judicial sale under the arbitration judgment; (e) that the value of Memorial Park and the cemetery business depends upon the continuous operation thereof by plaintiffs under the name long used and acquired with the land and upon the availability of the well drilled on parcel B by the partnership for the use of the cemetery; (f) that in the action brought by the Peeblers in March, 1942, defendants Olds, Andrews and Danziger were enjoined from going upon Memorial Park, and subsequently Olds was punished for violating such injunction; (g) that in the last-mentioned action Danziger filed two separate affidavits: in one of them he impliedly averred himself to be owner of Memorial Park; in the other he declared the land was owned by Graceland. These averments were made despite the indisputable facts that Graceland had by its president, J. M. Danziger, conveyed the five acres to Wake Development Company in 1926, that Wake by its president, J. M. Danziger, had conveyed the property to Olds in 1929, and that Olds and respondents had as a partnership operated it as the Olive Lawn Memorial Park Cemetery until March 1, 1940; (h) that after the latter date, ignoring the rights of respondents as tenants in common of Memorial Park, appellants occupied the land and used other assets of the partnership until they were acquired by respondents and thereafter used them to their profit until they were enjoined from committing further trespasses.

That the evidence warranted the findings that the prosecutions of the actions and proceedings were malicious and without probable cause cannot reasonably be gainsaid. The uniformity of defendants' conduct in commencing groundless lawsuits is readily apparent. The action on behalf of Graceland 16 years after it had transferred its title can be neither excused nor explained upon any reasonable hypothesis. No explanation of Mr. Danziger's instituting the action on behalf of Mahurin against the partnership (the Peeblers and Olds) can be found. Its viciousness is accentuated by the fact of Olds' threat, prior to the dissolution, to break the Peeblers "wide open" if they should not put up the money to buy more land surrounding Memorial Park. No excuse appears for the lawsuit against respondents and the commissioner named in the arbitration judgment for the sale of the partnership's assets. The bankruptcy proceeding could have had no purpose other than to becloud

respondents' title to the five acres they had purchased at the judicial sale. It was a reasonable inference that all of these actions resulting in final judgment for respondents were wholly unfounded and the conspiracy and hostility of defendants are clearly indicated thereby. The act of filing the unwarranted petition for supersedeas was another display of malice as was likewise the collusive cooperation of Olds with Danziger in having himself made a party defendant in the Graceland and Mahurin actions. In operating their cemetery on parcel B, in appropriating the water well, in utilizing Memorial Park in the conduct of their cemetery, in selling grave places in Memorial Park, by giving defendant corporation a name of such distinctive resemblance to that of the partnership—these facts warrant the finding of malice. Nor was such finding discounted by the warning by Danziger on June 4, 1943, that the suits already filed were but a modicum of defendants' litigious program. Not one of appellants had any interest in Memorial Park at the time of the filing of any of the lawsuits. Neither had any damage been suffered by Olds or by any other defendant as a result of any of the acts described in the the several complaints.

Malice is properly inferred from want of probable cause. It may also be inferred from hostile acts and declarations of the defendants evincing ill will toward plaintiffs, coupled with a showing of defendants' resolution to prosecute unfounded lawsuits for the purpose of gaining financial advantage over plaintiff. (*Mills* v. *Friedman,* 119 Cal.App. 74, 80 [5 P.2d 901].) Want of probable cause herein is established by the facts found and by the evidence above recited and inferences reasonably drawn therefrom. (Ibidem.) The ill will of appellants and their zeal to gain material advantage over respondents by the lawsuits were facts in proof from which the trial court might reasonably infer malice. (*Burke* v. *Watts,* 188 Cal. 118, 123 [204 P. 578].)

The actions had all terminated prior to the filing of the complaint herein. While the second action for damages alleged to have resulted from the judicial sale of the partnership assets is still pending, that fact does not bar respondents' right of recovery upon the final judgment in the first action based upon the unsuccessful prosecution of the first action upon the same allegations of damages. (*Hurgren* v. *Union Mutual Life Ins. Co.,* 141 Cal. 585 [75 P. 168].) If the refiling of an unfounded lawsuit might abate an action for the

malicious prosecution of the original action, the wrongful party might wholly defeat such an action by a postponement of his filing a second suit beyond the statutory period of limitation. (Ibidem.)

Conspiracy of the defendants was properly inferable (1) from the participation of all of them in one or more of the lawsuits, (2) in using the name "Olive Lawn Cemetery" for the corporation which they organized for the purpose of appropriating the business of the partnership, and (3) in their intimate association in connection with the conduct of the cemetery business of defendant corporation. While Mrs. Danziger had no nominal part in the institution of the actions, yet after her husband and Olds had been enjoined from going upon Memorial Park and Olds had been punished for violating the injunction Mrs. Danziger took immediate possession of respondents' cemetery and asserted rights thereto. However, although her boldness and promptness in taking up the campaign of harassing respondents after the injunction had defeated the unlawful acts of Messrs Danziger and Olds are suspicious circumstances when taken in connection with the fact that her husband was the chief actor in the events that harassed respondents, yet no substantial evidence of her actual participation in the conspiracy prior to or at the time of instituting the actions has been designated and we find none. Therefore, the award of damages against her must be reversed.

But this is not true as to the corporate defendant. Promptly upon its organization it became the willing tool of two of its codefendants in appropriating the good will of the partnership, in using its assets, in simulating its name and in selling grave places in Memorial Park. The argument that the corporation could not have been organized to acquire the grave lands of respondents because it was organized two years before the Peeblers purchased Memorial Park is wholly without merit. Immediately following the incorporation of Olive Lawn Cemetery the old partnership was dissolved. Its cemetery name and good will still belonged to the partners. At the judicial sale of the partnership's assets to respondents its good will as well as the five acres of Memorial Park became their property subject to the easements of those who had purchased burial plots. That the charter of the corporate defendant was suspended in January, 1942, makes it none the

less liable for its share in the ignoble and illegal wrongs.

The conspiracy having been established, each of the participants became liable for the wrongful acts of all and each is responsible as a joint tort feasor for such damages as ensued from their wrongful acts. (*Frost* v. *Hanscome,* 198 Cal. 550 [246 P. 53] ; *Revert* v. *Hesse,* 184 Cal. 295, 301 [193 P. 943].) The plaintiffs were entitled to joint recovery of damages against such defendants as were shown to have cooperated in prosecuting the fictitious actions against them. (Ibidem.)

The findings that respondents suffered the special damages are supported by the evidence of the sums necessarily expended by respondents in calling on their counsel and in their attendance at court and costs necessarily incurred in the actions ''filed by Mr. Danziger'' in the sum of $77. As to the expenditure of such sums in preparing defenses to the actions, the determination thereof by the trial court upon substantial evidence will not be disturbed on appeal. (*Bellman* v. *San Francisco High School Dist.,* 11 Cal.2d 576 [81 P.2d 894].) As to the value of the attorney's services, the court may determine their value without the aid of expert testimony. (*Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App. 268, 274 [25 P.2d 224].) Having been compelled to expend such sums respondents were entitled to recover them by a judgment establishing the malicious prosecution. (*Stevens* v. *Chisholm,* 179 Cal. 557, 564 [178 P. 128].)

The ''opinion'' of the trial court has no bearing upon the correctness of the adjudication of the special damages. (*Estate of Finkler,* 7 Cal.2d 97, 102 [59 P.2d 801].) However, in explanation of the court's opinion, at the time of filing it the court had evidently overlooked the amendment to the complaint alleging the special damages. The findings and conclusions are the conventional instruments for expressing the court's determination and decision. (Ibidem.) Where there is a conflict between the court's opinion and its findings the opinion must be disregarded. It is no part of the record on appeal and therefore cannot alter the decision. (*Falk* v. *Falk,* 48 Cal.App.2d 772, 778 [120 P.2d 720].)

It is ordered that paragraph IV of the judgment be modified to read as follows:

''That plaintiffs recover from the defendants other than Edith Danziger the sum of $977 and that they recover costs of suit against all the defendants in the sum of $34.75.''

As thus modified the portion of the judgment appealed from is affirmed.

McComb, J., and Fox, J. pro tem., concurred.

A petition for a rehearing was denied November 19, 1945, and appellant Danziger's petition for a hearing by the Supreme Court was denied December 20, 1945.