[Civ. No. 17209. Second Dist., Div. Two. Dec. 28, 1949.]

PATRICIA LEE HORNADAY, Appellant, v. MARY B. HORNADAY, as Administratrix, etc., et al., Respondents.

[Civ. No. 17208. Second Dist., Div. Two. Dec. 28, 1949.]

WILLIAM RONALD LEACH, a Minor, etc., Appellant, v. MARY B. HORNADAY, as Administratrix, etc., et al., Respondents.

Jennings & Belcher, Stevens Fargo and Louis E. Kearney for Appellants.

Bailie, Turner & Lake and H. A. Gebhardt for Respondents.

[Civ. No. 17274. Second Dist., Div. Two. Dec. 28, 1949.]

Estate of PATRICIA LEE JACOBSON, a Minor. PATRICIA LEE HORNADAY, Appellant, v. MARY B. HORNADAY, Respondent.

[Civ. No. 17273. Second Dist., Div. Two. Dec. 28, 1949.]

Guardianship of the Person and Estate of WILLIAM RONALD LEACH, a Minor. CALIFORNIA TRUST COMPANY, as Guardian, etc., Appellant, v. MARY B. HORNADAY, Respondent.

Jennings & Belcher and Stevens Fargo for Appellants.

H. A. Gebhardt, Bailie, Turner & Lake and Norman A. Bailie for Respondents.

MOORE, P. J.—The question for decision is whether attorney's fees paid by the guardian of a minor's estate for services in effecting the removal of his predecessor in office may be recovered from the personal representative of such predecessor.

In September, 1942, F. Paul Hornaday was duly appointed guardian of the estates and persons of Patricia and Ronald Leach, minors. On November 11, 1944, he was removed as guardian of each estate by order of the court and was ordered to turn over to Mae McCallom as special guardian all the assets and records of each estate. Subsequently, the orders removing Mr. Hornaday were affirmed. (30 Cal.2d 297 [182 P.2d 529].)

The events that precipitated the removal proceedings were his action in filing petitions for instructions for the sale of the assets of the estates. The petitions set forth his plan of procedure. Displeased with such plan and the evident desire of the guardian to acquire interests adverse to the faithful performance of his official duties, Mrs. McCallom caused herself to be appointed guardian *ad litem* of the minors, objected to Hornaday's petition and demanded his removal. The court issued an order for him to show cause why he should not be removed. He duly answered both the petition and the order. Following a hearing, the court made orders (1) denying his petition for instructions; (2) directing his removal and (3) appointing Mrs. McCallom as special guardian with powers of a general guardian in both proceedings. For a time she administered the two estates, then filed her final accounts whereby she requested allowances for her own services and for sums paid by her as fees, costs and expenses in causing Hornaday's removal. Omitting a recital of the numerous petitions, objections and hearings it all eventuated in the court's allowing her $34,008.51 out of Patricia's estate and $28,876 out of Ronald's estate for sums paid out for costs, and attorney's fees while she was acting under the court's appointment as guardian of the estates. Having been removed by order of court Hornaday filed his final account showing that he had turned over to his successor in office the assets of both estates. No costs were ever charged by him as guardian. The

only charges made against him in either estate were assessed against him personally. Mrs. McCallom having deceased, her administrator filed her final account and petition in Ronald's estate for fees, costs and expenses incurred by the deceased guardian and it was settled and allowed. Patricia having been emancipated filed her own objection to the final accounts and after the court had settled them she thereafter pursued the same course as that of Ronald's guardian in an effort to retrieve the moneys paid out by Mrs. McCallom in her campaign to cause the removal of her predecessor. Each filed a petition in his own guardianship proceeding for an order surcharging the administratrix of the estate of Hornaday for the sums paid as expenses in causing the latter's removal. Patricia's amended petition in her guardianship proceedings alleged substantially the facts above related with reference to Hornaday's petition to sell the assets of her estate, the appointment of the guardian *ad litem,* the petition for Hornaday's removal, the findings that he had attempted to acquire interests adverse to his guardianship duties, that he was guilty of waste and mismanagement and had failed to file inventories and accounts as required by law; that such conduct resulted in "the necessary expenditure of funds from the estate of this minor and loss to said estate of certain costs and expenses" amounting to $53,403.38, the value of services of Mrs. McCallom and of her attorneys. The petition of Ronald's guardian was the same in form as that of Patricia. The amount he sought to have surcharged to Hornaday's estate was $39,376.

Mrs. Hornaday's demurrers to both petitions were sustained without leave to amend, her motion to quash the citations issued on the petitions was granted and the citations were dismissed. From such orders both petitioners gave notice of appeal but since no provision is made for appeal from such an order by section 1630 of the Probate Code which is exclusive in guardianship proceedings (*Guardianship of Lyle,* 77 Cal.App.2d 159, 161 [174 P.2d 910]), those purported appeals will be dismissed.

Coeval with the filing of the petitions in the guardianship proceedings, the two wards instituted actions against the administratrix of Hornaday's estate and against National Surety Corporation, the surety on the guardianship bonds, for damages. After stating the facts above narrated the amended complaints allege that by the findings and order of the probate court it was adjudicated that Hornaday neglected faithfully to execute his duties as guardian and "conducted himself in

a manner adverse to the faithful performance of his duties as such guardian''; that such neglect resulted directly and proximately in loss to the estates of said minors; that the attorneys employed by Mae McCallom rendered services to the minors and their estates in respect to the proceedings for the removal of Hornaday as guardian; that after his removal the court conducted hearings and found the, value of the services of Mrs. McCallom and her attorneys and the costs, all of which were necessary to the preservation of the estates, and directed payment of such expenses which were paid and reported in the accounts of the duly acting guardians and those accounts were settled and allowed; that the National Surety Corporation as surety for Hornaday as guardian filed its bond with the clerk of the court on April 27, 1944, in the penal sum of $132,000 with the court's approval. Appellant alleged damages against the Hornaday estate and the National Surety Corporation in the amount paid as costs and attorney's fees in the removal proceedings.

After hearing of the demurrers of both defendants, the court sustained them and adjudged dismissals of both actions. For the purpose of this appeal the two orders in the guardianship proceedings and the two judgments were consolidated. Since the two complaints are in substance identical in theory and in fact this discussion will relate to Patricia's complaint and the conclusions derived will apply to Ronald's as well. This appeal is to test the correctness of the ruling on the demurrer.

### HORNADAY'S ACCOUNT WAS APPROVED

The worst that was charged against the deposed guardian was that he planned to sell the estate of his ward to gain a personal advantage to himself. He took no goods, chattel or money of his ward. He merely laid a scheme whereby he planned to induce the court to authorize a sale for his advantage. Had it not been frustrated by vigilant eyes and diligent action it might have resulted in tragical loss to the estate. But between the moment of a criminal concept and the hour of its consummation there is always a *locus poenitentiae*. If the feeling of repentance intervenes the contemplated wrongful act dies abornin' and no detriment is suffered.

Hornaday not having taken a farthing from his ward and his final account having been approved by the court, his status with respect to the guardianship was settled and by the established rule the order became res judicata. (*Adams* v. *Martin*, 3 Cal.2d 246, 248 [44 P.2d 572].) As in the cited case, this is

not an action in equity to set aside the order settling Hornaday's account on the ground of extrinsic fraud, nor does appellant contend that her property was concealed or that Hornaday failed to account for it. Neither did she allege a fraudulent prevention of a hearing.

### No Decree Declaring a Breach or Amount Due by Hornaday

The only things determined by the findings and judgment on the charges brought by Mrs. McCallom were Hornaday's perfidy and his removal from office and that Mrs. McCallom recover her costs from Hornaday, the removed guardian, or from the estate of the ward. The amended complaint alleges that by the findings, conclusions and order of Judge Vickers it was adjudicated that Hornaday had neglected to execute faithfully the duties of his trust as such guardian and had conducted himself in a manner adverse to the faithful performance of his official duties. If the findings and conclusions do not have the force and effect of an adjudication (*Guardianship of Leach,* 30 Cal.2d 297, 310 [182 P.2d 529]) and if the order of the court merely removed Hornaday as guardian there is no decree establishing the fact of the breach or the amount due by him. Without such decree the surety on the guardian's bond cannot be held for the loss. (*Richardson* v. *Royal Indemnity Co.,* 21 Cal.2d 557, 560 [134 P.2d 1].) It is true that the amended complaint sets forth as a recital that after Hornaday filed his petition for leave to sell "the stock" Mrs. McCallom employed attorneys "on behalf of the estate . . . to assist her in the prosecution of the rights of said minor and her estate . . . that subsequent to hearings conducted in this court, orders . . . were made . . : finding the value of said services" of Mrs. McCallom as guardian "and of the services of said attorneys, and the costs of said proceedings." However, no proceeding was ever instituted to establish the cost of the removal of Hornaday. (*Guardianship of Leach, supra.*) No amount is alleged to have been fixed as such cost. The complaint merely declares that such services and costs were necessary to the preservation of the minor's estate, then alleges an order was made directing payment of the amount from the minor's estate, and that such amount was paid "on account of said expenses." The "expenses" so paid were incurred during a three-year period but there is no allegation that they were incurred "during the pendency" of the removal proceedings; nor is it alleged that such services were

applied solely to the effort of removing the disloyal guardian. In fact, he was removed eight months and 14 days after Mrs. McCallom was appointed as guardian *ad litem*. In the absence of allegations of Hornaday's breach and of the amount found to be due by reason thereof no cause of action is stated.

### No Claim Was Filed

Appellant's cause of action is barred by virtue of her failure to file her claim in the estate of Hornaday as required by section 732 of the Probate Code. That statute is mandatory: "A judgment against the decedent for the recovery of money must be filed or presented in the same manner as other claims." Appellant contends that her claim is based upon a tort, not upon contract. (Prob. Code, § 707.[1]) If she relies upon Hornaday's bond or upon his oath of office, surely her claim is based upon contract. There is no statute or decision cited or known which excuses the timely filing of a claim against a decedent's estate or extends the time by reason of the fact that the claimant was a minor, had no guardian during a portion of the time during which he could have filed a claim, or because he had no guardian at all. No person can avail himself of a disability unless it existed when his right of action accrued (Code Civ. Proc., § 357), and no claim which is barred shall be allowed by the administrator or by the judge. (Prob. Code, § 708.[2]) The only judgment entered by the probate court against Hornaday was for costs in appellant's guardianship proceeding in the sum of $226.85. Since that sum was paid by her guardianship estate her right to claim payment now against Hornaday must necessarily be based upon that judgment and her subrogation thereto. The pleading shows no such claim was filed. [The same is true in Ronald's estate.]

Moreover, at the time and in the proceeding wherein the allowance of attorney's fees was made, Hornaday was not a party. He had already been removed from office for two months. Is it reasonable that he should be charged with sums paid by Mrs. McCallom without his approval and fixed by the

---

[1]707. "All claims arising upon contract, whether they are due, not due, or contingent . . . must be filed or presented within the time limited in the notice . . ."

[2]708. "No claim which is barred by the statute of limitations shall be allowed or approved by the executor or administrator, or by the judge. When a claim is presented to a judge for his allowance or approval, he may, in his discretion, examine the claimant and others on oath, and hear any legal evidence touching the validity of the claim. No claim which has been allowed is affected by the statute of limitations, pending the administration of the estate."

court without his even being notified of the hearing or called to testify to the value of the services rendered? To suggest that his estate should now be required to pay the judgments rendered ex parte against him is to ignore the doctrine of due process. Certainly his own administratrix would be entitled to the privilege of contesting such claim after the orthodox fashion which could have been done only after a filing of the claim. But had such claim been filed, it would have been rejected because the judgment for Mrs. McCallom's services and those of her attorneys was not against Hornaday. If he had appropriated $100,000 out of appellant's estate and judgment therefor had been entered against him for the money, there would have been no chance to recover the amount of the judgment from his estate without presentment by the owner of the judgment of a claim based on such judgment. Since that is true, it is inconceivable that appellant could walk unceremoniously into court and demand judgment for a sum of money awarded against an estate in a proceeding in which the alleged debtor was not a participant.

Appellant's contention that her action is based upon a tort is refuted by the fact that she has sued upon the bond and seeks to collect from the surety. Of course, before she can obtain judgment against the surety there must have been established a breach of the bond and the amount of damages suffered by the estate. Since no judgment was ever entered against Hornaday in the estate proceedings and no claim was filed with his administratrix within time (Prob. Code, § 700) and was therefore barred, recovery for breach of contract is hopeless.

As to the claim's being based upon tort: what act of Hornaday is alleged as a tort? Paragraph III of the amended complaint is the nearest approach. It is there alleged that as guardian of the estate on March 28, 1944, Hornaday filed a petition to sell an asset of the minor's estate consisting of stock in the Leach Relay Corporation; the petition was noticed for hearing; objections were filed; Hornaday was removed. His motion to the court, asking the court to join him in selling the stock was no tort. Had the court granted the motion and had Hornaday sold the stock to his own dummy and thereby realized a profit, a tort would have occurred. But a mere gesture, however vicious, is not an actionable tort; is not a basis for recovery. (See *Wallace* v. *Kerr*, 42 Cal.App.2d 182, 185 [108 P.2d 754], and authorities there cited holding that

it is the civil wrong resulting in damage that constitutes the actionable tort, not the naked conspiracy itself.)

The estate of a minor is in the custody of the probate court. (*Guardianship of Russell*, 21 Cal.2d 767, 772 [135 P.2d 369].) The guardian when he pursues the administration of an estate according to law is an agent of the court, not its master. In filing his petition, Hornaday was either asking the advice and approval of his plan to sell the stock or his mind was filled with dark pictures of his taking over the stock at a huge profit to himself. If the court had found that he was innocently recommending a sale of which the court disapproved, his petition would have been dismissed, the estate paying any cost incurred by the court's investigation. Had it found the second alternative, it would have dismissed the petition, the estate paying the cost. Removal of the guardian would rest in the court's discretion. If by filing a petition with evil intent no damage is proximately caused thereby, what sum would the beneficiary of the estate be entitled to collect from the guardian? Certainly, none. (*City of San Bruno* v. *National Surety Co.*, 119 Cal.App. 27, 31 [5 P.2d 951].) And unless the probate court surcharged the guardian's account with a definite sum allowed, after a hearing to which the guardian was a party it could not be collected from the guardian's estate, nor from the surety on his bond.

ATTORNEY'S FEES ARE NOT CHARGEABLE TO THE DEFENDANT

It is a settled rule of California that attorney's fees paid by a successful plaintiff in an action are never recoverable against the defendant. The only known exceptions to the rule are found in those cases (1) where the defendant has promised to pay such fees in event of plaintiff's recovery or (2) there is a statute authorizing such charges as an element of damage suffered. An agreement on a promissory note or in a lease to pay attorney's fees if payee should prevail in an action based on the writing are illustrative of the first class. Statutes authorizing charges such as expenses incurred in the dissolution of attachments or injunctions where a statutory remedy has been abused illustrate the second class. (*Soule* v. *United States F. & G. Co.*, 82 Cal.App. 572, 573 [255 P. 886] ; *Elder* v. *Kutner*, 97 Cal. 490, 493 [32 P. 563].) Even in assessing damages suffered by a defendant whose property has been unjustly attached the court is zealous to avoid awarding more than is necessarily incurred to dissolve a writ of attachment (*Elder* v. *Kutner, supra*, 494), or an injunction (*San Diego*

*Water Co.* v. *Pacific Coast Steamship Co.,* 101 Cal. 216, 225 [35 P. 651]; *Bustamente* v. *Stewart,* 55 Cal. 115, 116). But awarding attorney's fees for the *defense of the action* wherein an extraordinary writ has been issued is not authorized (*Elder* v. *Kutner,* supra).

The policy of the law of this state that an unsuccessful party to a legal controversy cannot be assessed damages to the extent of the value of the attorney's service employed by his adversary is established by a long line of decisions. (*Spooner* v. *Cady,* 5 Cal.Unrep. 357 [44 P. 1018]; *Mitchell* v. *Hawley,* 79 Cal. 301, 302 [21 P. 833]; *San Diego Water Co.* v. *Pacific Coast Steamship Co., supra,* 220; *Miller* v. *Kehoe,* 107 Cal. 340, 343 [40 P. 485]; *Curtiss* v. *Bachman,* 110 Cal. 433, 437 [42 P. 910, 52 Am.St.Rep. 111]; *Black* v. *Hilliker,* 130 Cal. 190, 193 [62 P. 481]; *Commercial Savings Bank* v. *Harnberger,* 140 Cal. 16, 22 [73 P. 625]; *Los Angeles Trust & Savings Bank* v. *Ward,* 197 Cal. 103, 107 [239 P. 847]; *Kahn* v. *Smith,* 23 Cal.2d 12, 15 [142 P.2d 13]; *Estate of Reade,* 31 Cal.2d 669, 671 [191 P.2d 745]; 11A Cal.Jur. § 161, p. 247.) These and other authorities disclose a uniform policy of the courts that the unsuccessful litigant shall not in the ordinary contest be required to pay counsel fees incurred by his opponent. The practice of awarding costs and attorney fees for services rendered by a plaintiff who in equity protects, preserves or increases a fund in which many are interested does not alter or depreciate the general rule. The California rule prevails generally in other jurisdictions. (*Dorris* v. *Miller,* 105 Iowa 564 [75 N.W. 482]; *Huff* v. *Bidwell,* 195 F. 430, 432 [115 C.C.A. 332]; *Tullock* v. *Mulvane,* 184 U.S. 497 [22 S.Ct. 372, 46 L.Ed. 657, 666]; *Estate of Bell,* 145 Cal. 646, 651 [79 P. 358].) While under section 3336 of the Civil Code in actions for conversion the plaintiff may recover compensation for the time and money properly expended in pursuit of the property, yet attorneys' fees will not be allowed under the guise of punitive damages. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 273 [158 P.2d 3].)

### APPELLANT'S AUTHORITIES

Appellant relies for recovery upon decisions of other jurisdictions. (*Phillips* v. *Liebmann,* 10 App.Div. 128 [41 N.Y.S. 1020]; *Ordinary* v. *Connolly,* 75 N.J.Eq. 521 [72 A. 363, 138 Am.St.Rep. 577]; *Mississippi Valley Trust Co.* v. *Taylor,* (Mo.App.) 238 S.W. 558; *Chase* v. *Faulkner,* 307 Mass. 404 [30 N.E.2d 239]; *Wiley* v. *Fuller,* 310 Mass. 597 [39 N.E.2d

418].) Wherever any of such cases appears to lend support to appellant it is because of the phraseology or diction of the statute construed. This is exemplified in the New Jersey statute which authorizes the chancellor *to allow such counsel fees* to the successful party as he shall deem reasonable. The Massachusetts statute authorizes the Supreme Judicial Court on appeal to award "expenses" out of the estate in controversy. In commenting upon the McIntire and Ordinary cases the author of the note in 34 Corpus Juris Secundum, page 1230, observes that "attorney's fees expended in recovering moneys improperly paid by an administrator have been held not a proper item of damages."

■ While the Massachusetts statute authorizes the court of last resort to award "expenses . . . to either party, to be paid by the other . . . out of the estate . . . as justice and equity may require" (General Laws, ch. 215, § 45) the California statute authorizes the court to "order costs to be paid by any party to the proceedings, or out of the assets of the estate." (Prob. Code, § 1232.) Such language could not be reasonably interpreted to mean anything other than that the court is at liberty to exercise its discretion, decide against whom *costs* of a proceeding shall be taxed. Compensation to attorneys is left to the agreement of the parties. (Code Civ. Proc., § 1021.) Had the Legislature intended that the fees of counsel employed in a contest to oust a designing administrator should be recoverable from him as a part of the costs it would have so declared. (*Estate of Olmstead,* 120 Cal. 447, 454 [52 P. 804].)

Appellant cites certain California decisions as persuasive of their thesis, to wit, *McCormick* v. *Marcy,* 165 Cal. 386 [132 P. 449]; *Nelson* v. *Kellogg,* 162 Cal. 621 [123 P. 1115]; *Levitzky* v. *Canning,* 33 Cal. 299; *Neves* v. *Costa,* 5 Cal.App. 111 [89 P. 860]; *Stevens* v. *Chisholm,* 179 Cal. 557 [178 P. 128]; *Peebler* v. *Olds,* 71 Cal.App.2d 382 [162 P.2d 953]; *Bird* v. *American Surety Co.,* 175 Cal. 625 [166 P. 1009]; *Handy* v. *Samaha,* 117 Cal.App. 286 [3 P.2d 602]. Each of these cases is distinguished on its facts or it says nothing appertaining to the issue under consideration. In *McCormick* v. *Marcy* there was a warranty to defend the title to land. That contract justified an award of damages to the extent of the reasonable expense incurred by the vendee. *Nelson* v. *Kellogg* did not involve attorney's fees incurred in the *defense of an action* but merely the attorney's fees paid to procure

her release from the arrest. The same was true of *Neves* v. *Costa*. *Stevens* v. *Chisholm* was an action for malicious prosecution. Under section 3294,* Civil Code, the court was warranted in assessing the reasonable attorney's fees expended by the plaintiff in employing counsel and procuring sureties to obtain his release. Under the cited section the plaintiff was entitled to recover as special damage the amount he was compelled to expend or incur in his defense. ██ If fees are not properly chargeable as damages in cases where a writ has been abused, by what process of reasoning may a ward be entitled to recover attorney's fees paid out by his guardian in a proceeding commenced on his own motion? If the attorney's fees paid by Mrs. McCallom were incurred in an action voluntarily commenced by her how can they be held to have been directly or proximately caused by an act of Hornaday? Not a single order of the probate court allowed costs against Hornaday as guardian, but in each instance they were taxed against him personally.

██ Because the surety was responsible only for the faithful performance of such duties as were imposed by law upon the assured as guardian, there was no obligation upon him to defend against the removal proceeding. His duty which was guaranteed by the surety was to account for moneys or other movables that came to his hands. That act was complete when his successor receipted for the total inventory. (*Moody* v. *Pacific Surety Co.*, 41 Cal.App. 287, 289 [182 P. 802] ; 11B Cal.Jur. § 1398, p. 930.)

██ ▪ Moreover, the very contest in which Hornaday was engaged to retain his office was a personal controversy. Even though guardian of the estate, he could not collect therefrom his expenses for defending his position. If he could not charge to the estate of the minor his expense of defense (*Estate of Schwartz*, 87 Cal.App.2d 569, 574 [197 P.2d 223]) why should his prosecutors collect their expenses from him?

██ As to the obligation of the surety for acts done by Hornaday it was necessary to allege that while he was attempting to perform an official act in the line of his duties he injured the estate. (*Felonicher* v. *Stingley*, 142 Cal. 630, 632 [76 P. 504].) If he engaged in doing an act not of an official nature,

---

*"'In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.''

it was personal. For his personal acts or thoughts or schemes the surety was not liable. If it cannot be alleged that the injury he did to the estate was committed while attempting to do an official act then the surety is not liable on its bond (*Ibid.*, p. 634) and the demurrer was properly sustained without leave to amend.

The appeals from the orders sustaining the demurrers to the petitions in the guardianship proceedings are dismissed; the judgments of dismissal of the two actions pursuant to the sustaining of demurrers are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied January 20, 1950, and the following opinion was then rendered:

THE COURT.—In their petition for a rehearing appellants contend that is was error to dismiss their appeals from the orders sustaining Mrs. Hornaday's demurrers to the two petitions mentioned in paragraph three of the opinion on the ground that they are nonappealable. The opinion emphasizes that there was no showing in either petition that Hornaday as guardian had received assets which he had not delivered to his successor. The order sustaining the demurrers were determinations that no facts had been alleged which would empower the court to make any order under section 1555 of the Probate Code.

In any event, the merits of the asserted right of appeal from the two orders are fully covered by the court's treatment of the appeals from the judgments of dismissal. No prejudice was caused by such dismissals.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1950. Edmonds, J., and Carter, J., voted for a hearing.