[Civ. No. 24058. Second Dist., Div. One. Mar. 3, 1960.]

EDWARD O. CHAPIN, Appellant, v. RAY L. GRITTON
et al., Respondents.

Avery M. Blount for Appellant.

Joseph Shane, Hennigan, Ryneal & Nixen for Respondents.

FOURT, J.—This is an appeal from an interlocutory judgment dissolving the Meadowbrook Investment Company, defendant corporation, and granting an affirmative judgment in favor of the individual defendants, Ray L. Gritton and

Lynn Gritton, for an indeterminate amount up to $11,704.08, depending upon the net amount realized upon the sale of assets. The matter was heard before the court without a jury.

This appeal is taken on the clerk's transcript. No reporter's transcript has been furnished and therefore the recitals in the judgment and the findings of fact are deemed to be true and are binding upon this court. (*Crowell* v. *Braly,* 169 Cal.App.2d 352, 354 [337 P.2d 211] ; *Transportation Guar. Co.* v. *Jellins,* 29 Cal.2d 242, 245 [174 P.2d 625]; *White* v. *Jones,* 136 Cal.App.2d 567, 569 [288 P.2d 913] ; *Shumaker* v. *Biscailuz,* 130 Cal.App.2d 414 [278 P.2d 939] ; *Kompf* v. *Morrison,* 73 Cal.App.2d 284, 286 [166 P.2d 350].)

The rule is well stated in *Ferl* v. *Ferl,* 135 Cal.App. 2d 458 [287 P.2d 514] at page 462:

". . . For it is so well settled as to be considered axiomatic that upon an appeal upon the judgment roll alone it is presumed that the findings of fact, conclusions of law, and judgment were within the issues raised by the pleadings and the evidence, and were fully supported by the evidence at the trial. In the case of *Freeman* v. *Gray-Cowan Inc.,* 219 Cal. 85 [25 P.2d 415], the court, in sustaining a judgment for the plaintiff, stated as follows, at pages 87-88:

" '. . . In *Silvers* v. *Grossman,* 183 Cal. 696, 702 [192 P. 534], it is said: "And where the appeal is upon the judgment roll alone, so that the record fails to disclose whether or not, at the trial, objections were interposed to evidence as not within the issues, it has been held that it will be presumed in support of the findings and judgment that the pleadings were treated as sufficient to raise the issues upon which the findings were made and that the evidence in support of such issues was introduced and went in without objection. (Citations) ; . . ." ' "

Plaintiff filed an action in Los Angeles County numbered 639901 on February 8, 1955. This complaint named Ray L. Gritton, Lynn Gritton and Meadowbrook Investment Company, Inc., a corporation, as defendants and was in two counts, the first of which was for money ($13,523.25) for services rendered and the second of which was upon an open book account (for labor and services) in the same amount. A bill of particulars was demanded and furnished.

On March 18, 1955, the plaintiff filed another action in the same court numbered 641700 against the same defendants. That complaint was titled "Complaint for Accounting and

Injunction; for Appointment of Receiver; and to Dissolve a Corporation.'' The individual defendants demurred and upon the demurrer's being sustained an ''Amended Complaint for Accounting and Injunction; for Appointment of Receiver; and to Dissolve a Corporation'' was filed on May 5, 1955.

Action Number 641700, as amended, alleged that the defendant corporation was formed with its principal office in Los Angeles and was engaged in the subdividing and sale of real estate in Riverside County; that each of the three principals concerned herein held 10 shares of issued capital stock and that no other stock was issued. It alleged conversion by Lynn Gritton of corporate funds and that the appointment of a receiver was necessary. It asked for an injunction against any further conversion, for an accounting, and finally, that the corporation be dissolved and a division of its assets be made among the three parties as their interests might appear.

On May 31, 1955, defendants Lynn Gritton and Ray Gritton filed an answer to the amended complaint. The individual defendants alleged, among other things, that the corporation was indebted to them; that there was an agreement between the parties that ''none of the parties were to receive any wages or salary and that they were each to receive as compensation for any labor or services performed one-third of the profits, if any, of the said venture operated as Meadowbrook Investment Company after all debts and obligations of the venture were first paid, including whatever moneys that were advanced by any of the parties and the return to defendants of said $35,000.00 for the property transferred to Meadowbrook Investment Company by them.'' The answering defendants also alleged that ''on the moneys they advanced to (the Company), it was agreed and understood that interest at the rate of 6% per annum would be paid for said advance.'' They further alleged that ''Plaintiff herein has on numerous occasions since May 19, 1950, received advances from the Meadowbrook Investment Company account in excess of any sums due him and as an advance against his share of the prospective future profits. And in addition thereto plaintiff did collect funds belonging to (the Company) and did convert them to his own personal use.''

Meadowbrook Investment Company, Inc., also filed an answer to the amended complaint on May 31, 1955. Therein it alleged among other things that ''no shares of stock of the corporation have, in fact, been issued or delivered to anyone.'' In the prayer it is stated:

"WHEREFORE this defendant (Meadowbrook Investment Company, Inc.) prays judgment as follows:

"1. That by reason of internal dissension among officers and directors of this corporation which has prevented the corporation activities and affairs from being carried on to the benefit and advantage of the corporation that the above court order a dissolution of said corporation; and

"2. That a full and complete accounting of the affairs of the corporation be ordered and had and the interests of the corporation and plaintiff and defendants Gritton be determined and that following the payments of all obligations, debts, costs, *expenses and attorney's fees due from the corporation,* or in the alternative, following provisions for the payment having been made therefor, that the assets be divided among the parties as their interests appear, as shall be shown by the evidence upon the trial of the issues; and

"3. For such other and further relief as to the court may seem meet and proper." (Emphasis added.)

Ray L. and Lynn R. Gritton, the latter sued as Lyn Gritton, filed an answer on October 7, 1955, wherein they denied any indebtedness to the plaintiff and alleged that plaintiff had been paid advancements on anticipated profits and that he had misappropriated and converted to his own use property of the corporation. The prayer read as follows:

"WHEREFORE, defendants pray judgment that plaintiff take nothing by reason of this complaint;

"1. That upon an appropriate application therefor or stipulation of the parties entered into prior thereto, that the above action be consolidated for trial with Action No. 641,700 now pending in the above court between the same parties, plaintiff and defendants, in which plaintiff herein seeks an accounting and dissolution of the corporation among other things and that upon the trial of the issues of said actions as so consolidated for trial, *that each of the parties to said action be held accountable and chargeable for all sums so received by him and that an accounting of the affairs of the parties and the corporation be had and distribution be ordered and made as the interests of the parties shall appear.*" (Emphasis added.)

On June 3, 1955, the corporation filed an answer in the case numbered 639901 wherein it in effect denied all of the allegations with reference to any alleged loan of money or services rendered by the plaintiff or of any indebtedness to the plaintiff. The corporation as an affirmative defense alleged that the plaintiff and the defendants Gritton entered into an oral

agreement under which money and services were to be expended by them, that there was pending action numbered 641700 and that it was necessary to determine the terms of the agreement between the parties and "that equity and justice be done for all parties."

On November 21, 1957, a pretrial conference was held before Judge Clarence L. Kincaid. In the pretrial conference order, filed November 29, 1957, it was stipulated that Attorney Joseph Shane was to perform certain duties. The order provided in part as follows:

"Action for accounting, injunction and to dissolve a corporation.

". . . . . . . . . . . . . . .

"d. All money in the possession of the parties or of their counsel belonging to the defendant corporation shall be turned over to Joseph Shane as attorney for said defendant corporation and by him retained until other or further order of the court, except the payment of contract obligations of the corporation, payment of taxes, and expenses in the ordinary course of business to be determined by Joseph Shane as attorney for said defendant corporation.

"e. All books, records, contracts and evidence of title of the defendant corporation including all bank records and cancelled checks regardless of the bank in which place or name in which said accounts were maintained relating to any business involving the defendant corporation shall be turned over into the possession of Joseph Shane on or before December 15, 1957 to be by him retained until judgment or dismissal or further order of court herein. That all said records shall be subject to inspection by any counsel of record.

"f. Joseph Shane shall make arrangements with the accountant to complete the accounting through December 31, 1957 and a copy of said accounting shall be delivered to all counsel of record by January 15, 1958.

"g. All moneys due or payable to the defendant corporation shall be paid to Joseph Shane and held by him as provided herein.

"h. All records of all sales from and after the date hereof shall be delivered to Joseph Shane.

"i. All money, the property of the defendant corporation, collected by any party to this action, shall immediately be paid to Joseph Shane.

"j. Avery Blount as attorney for plaintiff, shall write to each and all of the contract holders advising and directing

them to make all payments heretofore due or hereafter to fall due to Joseph Shane.

"k. . . . . . . . . . . .

"1. Joseph Shane shall have authority to pay the accountant a reasonable fee on account of his accounting services rendered on behalf of the corporation from any funds of the defendant corporation in his possession."

On July 1, 1958, plaintiff filed a "Request for Entry of Dismissal" against defendants Gritton in action No. 641700 and dismissal thereof was entered July 8, 1958. On July 3, 1958, a minute order was entered in case No. 639901 to the effect that "pursuant to stipulation, this case is consolidated with 641,700."

A pretrial conference was held before Judge A. Curtis Smith, on July 15, 1958. The pretrial conference order was filed July 16, 1958, and provides in pertinent part as follows:

"It is now stipulated between all parties that the issues contained in said case No. 639,901, as more specifically set forth in said Bill of Particulars and in this order, shall be heard as part of the accounting in Case No. 641,700 and shall be disposed of therein and that when the judgment is prepared and signed in Case No. 641,700 it shall contain a direction that Case No. 639,901 be dismissed, and that in Case No. 639,901 findings of fact and conclusions of law are waived and costs, if any, shall be allowed and taxed in Case No. 641,700 only. It is so ordered.

"In Case No. 641,700, Ray L. Gritton and Lyn (sic) Gritton, now appear through their attorney, J. David Hennigan, and ask leave to intervene, and it is stipulated and ordered that they may intervene and that the issues with respect to them shall be as framed by the amended complaint and by their answers heretofore filed in such case No. 641,700, except as limited and modified by this Pre-Trial Order. It is further stipulated and ordered that no written complaint in intervention need be filed other than the said answers already filed.

"With respect to Case No. 641,700 there is a dispute whether the transactions therein involved were the transactions of the individual parties as joint venturers or the transactions of the corporation defendant. *All parties, however are in agreement that there should be an accounting and the assets should be distributed to the three individual parties as their interests may appear. All issues with respect to dissolution of the corporation and with respect to whether the transactions were corporate transactions or joint venture transactions are*

*waived,* and for the purposes of this lawsuit no distinction is to be drawn between transactions purportedly as joint venturers or purportedly as corporate transactions but each and all such transactions are to be received in evidence subject only to other objections relative to admissibility of evidence. . . . (Emphasis added.)

"It is stipulated that the accounting . . . is true and correct, except that plaintiff objects to certain matters which he has set forth in a document entitled 'Statement of Accountant re Purported Account and Audit,' which document is hereby ordered filed for the sole purpose of explaining the first six issues hereinafter mentioned.

"The issues remaining to be tried are as follows:

" . . . . . . . . . . . . .

"Issue No. 7:

"Is plaintiff entitled to any moneys for salary for services alleged in Action No. 639,901, and, if so, the net amount thereof to which he may be entitled.

"Issue No. 8:

"This issue involves the accounting for two lots, to wit: Lots No. 79 and No. 80, in the possession of the plaintiff.

"Issue No. 9:

"This issue involves the obligations, if any, owed to Mr. Shane, Mr. Deeley, Mr. Hennigan, Mr. Burton and Mr. Irey.

"Issue No. 10:

" . . . . . . . . . . . .

"Issue No. 11:

"In what manner should the division or distribution of the net assets be made."

The order also set forth that it was stipulated that certain agreements, options, articles of incorporation, grant deeds, checks and other papers could be introduced into evidence without further foundation.

Along with the 11 issues agreed upon by the parties in the order set forth above, three additional issues were added for trial. Issue Number 12 concerned the extent to which plaintiff was to receive a credit against his account; Number 13 dealt with to what extent, if any, plaintiff wrongfully and in violation of his fiduciary relationship attempted to obtain a secret profit. Number 14 dealt with a profit that plaintiff had obtained on the sale of five houses at the inception of the joint venture.

The trial was had upon the 14 issues, all other issues having been disposed of by stipulation. At the conclusion of the

trial, the judge announced his decision and ordered findings of fact and conclusions of law and judgment to be prepared. On December 17, 1958, the "Findings of Fact and Conclusions of Law" and "Interlocutory Judgment" were filed. The conclusions of law provide in pertinent part as follows:

"II

"That plaintiff and defendant, Meadowbrook Investment Co., Inc., a corporation, are entitled to a decree of dissolution of said corporation as well as the joint venture of the individual parties herein for the reason that it is not practicable to carry on said joint venture business or the business of Meadowbrook Investment Co., Inc., a corporation, and on the further grounds that it is the desire of all parties to dissolve their said business activities, both as individuals and as a corporation and on the further ground that other circumstances, as appear in said findings of fact, render a dissolution equitable."

The judgment provides as follows:

"II

"That the corporate entity of Meadowbrook Investment Co., a corporation, as well as the joint venture of the individual parties herein is hereby dissolved."

On the same date, plaintiff filed his "Objections to Proposed Findings of Fact and Conclusions of Law and Interlocutory Judgment." In these plaintiff asserted among other things that the findings of fact and conclusions of law were "indefinite, uncertain, ambiguous and unintelligible"; that the court should not have believed the testimony of the defendant Lynn Gritton; that the findings of fact must be rewritten to reflect correctly the amounts established and shown in the Deeley report (i.e. audit and accounting); that plaintiff objected to the appointment of Attorney Joseph Shane, the attorney of record for the corporate defendant, and in giving him authority to dissolve the corporation and make a sale of the assets; that the judgment makes no provision for payment of corporate debts other than debts between the parties, and *"said judgment should provide and direct the person whom the Court appoints to dissolve said corporation and liquidate its assets,* to ascertain the amounts due and pay all taxes due by said corporation, . . .". (Emphasis added.)

On January 2, 1959, plaintiff filed his "Notice of Intention to Move for New Trial." In this he asserted two grounds, namely:

"1. Insufficiency of the evidence to justify the decision,

findings of fact, conclusions of law and interlocutory judgment signed, filed and entered therein.

"2. Errors in law occurring at the trial and excepted to by plaintiff."

Plaintiff filed a "Memorandum on Argument of Motion for New Trial" on February 3, 1959, *and for the first time, challenged the jurisdiction of the court to dissolve the defendant corporation.* He also asserted that the trial court was without jurisdiction to "appoint Joseph Shane, or anyone else, trustee in dissolution." On February 18, 1959, plaintiff filed his "Notice of Appeal."

 Appellant's first contention in the appeal is that the trial court was without jurisdiction to dissolve the defendant (respondent) corporation.

The jurisdiction of the superior court in an action for the involuntary dissolution of a corporation is set forth in section 4654 of the Corporations Code. It provides as follows:

"*The superior court of the county in which the principal office of the corporation is located shall have jurisdiction of an action for involuntary winding up or dissolution of the corporation,* and may make such orders for winding up and dissolution of the corporation as *justice and equity require,* including orders providing for the presentation of claims of creditors and the barring from participation of creditors and claimants failing to make claims and present proofs as required, as in case of proceedings for voluntary winding up and dissolution." (Emphasis added.)

Appellant in both his original and "Amended Complaint" specifically alleged that the respondent corporation was a California corporation with its principal place of business in Los Angeles, California. Appellant brought this action in the Superior Court of Los Angeles County.

Section 4650 of the Corporations Code concerns itself with the complaint and the persons who may bring the action. This section provides in part as follows:

"A complaint for involuntary winding up or dissolution of a corporation . . . may be filed in the superior court of the county in which the principal office is located by the persons described in any of the following subdivisions:

"(a) . . . . . . . . . .

"(b) *A shareholder or shareholders who have been record holders for a period of not less than six months and who hold not less than 33 1/3 percent of the number of outstanding shares.* (Emphasis added.)

"(c) . . . . . . . . . . ."

Section 4651 of Corporations Code sets forth the grounds upon which an involuntary dissolution may be predicated. It provides in part as follows:

"The court, upon filing of a verified complaint, may entertain proceedings for the involuntary winding up or dissolution of such a corporation, when it is shown that any one or more of the following reasons exist:

" . . . . . . . . . . .

"(d) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders.

"(e) The directors or those in control of the corporation have been guilty of persistent fraud, mismanagement, or abuse of authority, or persistent unfairness toward minority shareholders, or its property is being misapplied, wasted, or lost by its directors or officers.

"(f) The liquidation is reasonably necessary for the protection of the rights or interests of any substantial number of the shareholders, or of the complaining shareholders."

Appellant alleged in his amended complaint as follows:

"II

"That on or about May 19, 1950, this plaintiff, together with LYN (sic) GRITTON, CECIL HARTMAN and RAY GRITTON, caused to be organized under the laws of the State of California a corporation named Meadowbrook Investment Company, Inc. That since the organization . . . on or about May 19, 1950, the plaintiff herein and Lyn (sic) Gritton and Ray Gritton have acquired and purchased all of the interest of Cecil Hartman in said corporation, and the only persons who are now owners of stock or have any interest in said corporation are this plaintiff and Lyn (sic) Gritton and Ray Gritton.

" . . . . . . . . . . .

"IV

"That the said (corporation), has issued thirty (30) shares of its capital stock as follows:

"10 shares of its capital stock to plaintiff Edward O. Chapin;

"10 shares of its capital stock to Lyn (sic) Gritton; and

"10 shares of its capital stock to Ray Gritton; and that plaintiff herein and the said Lyn (sic) Gritton and Ray Gritton, and each of them, are the sole and only stockholders of said corporation."

While there is an allegation that plaintiff owns one-third of

the shares, there is no direct allegation that plaintiff was a shareholders of record for the required period of time (i.e., "not less than six months"). However, it is well established that the pleadings are to be liberally construed. Appellant did allege, as set forth heretofore that "on or about May 19, 1950, the plaintiff herein . . . have acquired and purchased all of the interest of Cecil Hartman . . . , and the only persons who are now owners of stock or have any interest in said corporation are this plaintiff and Lyn (sic) Gritton and Ray Gritton." The issue was raised by the demurrer interposed by defendants Gritton to the complaint. The issue was raised again by the respondent corporation when in its answer it asserted:

"I

". . . that neither plaintiff or defendants Gritton paid into the corporation any sums for the issuance of said capital stock and that to the date hereof no shares of stock of the corporation have, in fact, been issued or delivered to anyone."

Appellant in the amended complaint charged the respondents Gritton with conversion of corporate property and funds. In the prayer of the respondent corporation's answer to the amended complaint it is set forth:

"That by reason of internal dissension among the officers and directors of this corporation which has prevented the corporation activities and affairs from being carried on to the benefit and advantage of the corporation that the above court order a dissolution of said corporation; . . .".

Finally, during the pretrial held on July 15, 1958, it was stipulated by the parties that *"All issues with respect to dissolution of the corporation . . . are waived . . ."*. (Emphasis added.)

Appellant's contention that the trial court did not have jurisdiction to dissolve the corporation is well answered in *Abalian* v. *Townsend Social Center, Inc.*, 112 Cal.App.2d 441 [246 P.2d 965] wherein the court stated at page 446:

"It is appellants' contention that 'Parties cannot confer jurisdiction on a trial court by stipulation,' citing *Adolph M. Schwartz, Inc.* v. *Burnett Pharmacy*, 112 Cal.App.Supp. 781 [295 P. 508], and other cases. That such is the general rule in reference to jurisdiction of the subject matter cannot be doubted. However, there appears to have been no violation of this rule in the instant case. . . . all that the parties did was to stipulate as to . . . a matter susceptible of proof. This was done for the purpose of expediting the trial . . .

That such stipulations are frequently made use of in respect to matters of evidence, is common knowledge.

 *"The correct rule, applicable to the present controversy,* is found in *Lewis* v. *Shaw,* 77 Cal.App. 99, 102 [246 P. 86], where the court says: '*A stipulation of facts which would state a cause of action, of course could be made, but jurisdiction of the subject matter of an action cannot be conferred by stipulation merely in so many words admitting jurisdiction. It would require a statements of facts, sufficient within themselves, stripped of any conclusions of law.'*

*"The trial court obviously had jurisdiction to hear a controversy of the present nature. The subject matter involved was the dissolution of the (corporation). . . . Appellants, . . . were under no compulsion to make such a stipulation, and the trial court was justified in relying thereon. There is no merit in this contention of the appellants."* (Emphasis added.)

As heretofore indicated "All issues with respect to dissolution of the corporation . . . are waived" by the pretrial order filed July 16, 1958. Rule 8.8 of Rules Relating to Pretrial Conferences provides as follows:

"When filed, the pre-trial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice. . . ."

In *Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825 [334 P.2d 97], the court in discussing the effect of the pretrial orders, stated at page 829 that:

". . . What was said in *Baird* v. *Hodson,* 161 Cal.App.2d 687, at pages 689-690 [327 P.2d 215], is applicable:

" 'A review of legal history reveals innumerable rules, regulations, laws and processes introduced into the law by which there is a more efficient and effective handling of cases. In each instance not only was it necessary, but progress in the law demanded it. Another of such progressive steps is now part of California law, which may be referred to as pretrial procedure. A review of the rules for pretrials clearly reveals the reasons behind them. Obviously, the rules were designed to relieve the members of the legal profession and the members of the judiciary from legal technicalities, trivia, details, unessentials, and to have the case tried at an early date upon the real and substantial issues in the case. This is a most laudable and meritorious purpose. . . .'

" '. . . . . . . . . . .

" 'To satisfy the purposes and obtain the full effectiveness of pretrial procedure it is necessary not only that the practitioner observe the rules, but that the courts observe them. In the instant case, the pretrial conference order reflects the contention made by all parties to the action and definitely and numerically sets forth the "Issues" . . . Further, the order states: (No law and motion matters are pending or likely; all discovery proceedings have been completed and the case is ready for trial.) No action was taken by (plaintiff) as allowed to him under rule 8.7(b).

" 'This pretrial conference order then controlled the subsequent course of the case in accordance with rule 8.8 and the issues raised by the pleadings were superseded. The pretrial judge, the trial judge and (defendants) had the right to rely upon that posture of the case. Particularly is this true because (plaintiff) did not request a modification of the pretrial conference order, which he had a right to request under rule 8.7.' "

See also the more recent cases of *Crowell* v. *Braly, supra,* 169 Cal.App.2d 352, 355-356 [337 P.2d 211] ; *De Stackelberg* v. *Lamb Transportation Co.,* 168 Cal.App.2d 174, 180 [335 P.2d 522].

The provisions of the Corporations Code were satisfied. The amended complaint was verified as required by section 4651 of the Corporations Code; section 4653 of that code specifically permits intervention by shareholders. The record discloses that after a dismissal by plaintiff immediately before trial of this action, the individual defendants did intervene. The issuance of specific orders for winding up and dissolution is discretionary with the court which may make such orders "as justice and equity require." Requirements of section 4657 of the Corporations Code were carried out by the court when, after a full hearing, the court did decree the winding up and dissolution of the corporation. Section 4656 of the code in question is also a discretionary matter with the trial court.

There is in our opinion no question of jurisdiction, but, at best, in the absence of the stipulation, there could have been a question of fact as to whether plaintiff would be able to prove his action.

The cases cited by appellant to support his contention are clearly distinguishable from the case at bar. *Keeler* v. *Schulte,* 47 Cal.2d 801 [306 P.2d 430], involved a representative suit in which the corporation was improperly not named as a defendant. Appellant quotes from page 803 as follows:

". . . A California corporation can only be dissolved in the manner and under the conditions prescribed in the Corporations Code of this state (§§ 4600-4692), . . ." The remainder of the sentence which was not quoted by appellant reads: "*and the withdrawal of a corporation's charter under ecclesiastical rules of law and order would not work a corporate dissolution in disregard of such state law.*" (Emphasis added.) It is clear that under the circumstances the case is of no help to the appellant.

*Neall* v. *Hill* (1860), 16 Cal. 145 [76 Am.Dec. 508], is not applicable since it was decided some 71 years before section 4654 of the Corporations Code specifically granted to the superior court the jurisdiction of an action for the involuntary winding up of a corporation. The cases of *Elliott* v. *Superior Court,* 168 Cal. 727 [145 P. 101] and *Smith* v. *Superior Court,* 97 Cal. 348 [32 P. 322], were also decided prior to the passage of section 4654 of the Corporations Code.

*Cardoza* v. *Millington,* 142 Cal.App.2d 26 [297 P.2d 778] is distinguishable from the case at bar. In the Cardoza case one of the issues of fact to be determined by the trial court was whether or not the plaintiff had held his shares for more than six months. The defendant denied that plaintiff had held them over six months and the court found that the evidence was clear that said shares had not been held for the required period. The cited case is in nowise analogous to the present situation where the appellant now wishes to deny his own pleadings.

We conclude that since the issues as to the dissolution of respondent corporation were stipulated to, and therefore not listed in the pretrial conference order as issues remaining in dispute, they were no longer issues in the case.

This case presents an anomaly in that though it was the plaintiff who was the moving party in obtaining the dissolution of the corporation and the very relief he sought has been granted he now challenges the jurisdiction of the court to grant any such relief. In effect he argues that this court should reverse the judgment, permit him to amend his complaint to the end that he can pursue his remedy of involuntary dissolution.

 Appellant's next contention is that the trial court erred in granting a money judgment in favor of respondents Gritton. He asserts that the rendition of a judgment which may impose personal liability on him is outside the issues.

In action Number 639901, filed on February 8, 1955, appellant sought money under a common count. Grittons' answer, filed on October 7, 1955, asked for an accounting by all parties and consolidation of the actions. After alleging in their answer that appellant had converted moneys of the corporation, it concluded with the following prayer—the pertinent provision of which is:

". . . that each of the parties to said action be held accountable and chargeable for all sums so received by him and that an accounting of the affairs of the parties and the corporation be had and distribution be ordered and made as the interests of the parties shall appear."

Appellant's statement in his brief that "The issues in Number 639901, however, were only whether the corporation or the Grittons were indebted to plaintiff for services and money lent . . ." is not accurate.

In their answer to appellant's amended complaint individual respondents alleged that:

"II

"Plaintiff herein has on numerous occasions since May 19, 1950, received advances from the Meadowbrook Investment Company account in excess of any sums due him and as an advance against his share of the prospective future profits. And in addition thereto plaintiff did collect funds belonging to Meadowbrook Investment Company, Inc., and did convert them to his own personal use."

On July 8, 1958, a minute order was entered and pursuant to stipulation, actions Numbers 639901 and 641700 were consolidated. The pretrial conference order filed on July 16, 1958, is heretofore set forth in part.

Apparently, appellant's position is that since he filed a dismissal as against the individual respondents in action Number 641700, and they subsequently intervened, the court erred in rendering a judgment in their favor. With this contention we do not agree.

In the conclusions of law filed on December 17, 1958, it is stated as follows:

"That pursuant to the accounting had herein, judgment should be entered in favor of defendants, Ray L. Gritton and Lynn Gritton, ordering and directing that they jointly receive $55,444.99 in cash from the property and assets of the business of the parties, consisting of $32,036.83 being return of capital contribution and interest thereon, and $23,408.16 to equalize and offset the amount of anticipated profits heretofore re-

ceived and retained by plaintiff, Edward O. Chapin, from the assets of the parties.''

Appellant having presented himself to the court and the court having found that among the assets of the business enterprise there was an indebtedness due from plaintiff by reason of his drawing against profits and by further reason of his violation of his fiduciary relationship in an attempt to make secret profits, he is in no position to complain that this asset should not also be collected and distributed.

Having specifically asked the trial court to determine and pay out all debts of the corporation, he cannot now complain of the court's finding that among the obligations and debts of the company were obligations to the individual respondents in the sum of $32,036.85.

Appellant further stipulated in November, 1957 that ''all monies due or payable to the defendant corporation should be paid to Joseph Shane and held by him . . .'' and that ''all money, the property of the defendant corporation, *collected by any party to this action,* shall immediately be paid to Joseph Shane.'' (Emphasis added.)

Appellant having failed to pay to Joseph Shane monies which the trial court found were improperly collected by appellant should not complain because the court charged his account in the dissolution and distribution with these sums.

By the pretrial conference order filed July 16, 1958, it was stipulated that ''all parties . . . are in agreement that there should be an accounting and the assets should be distributed to the three individual parties as their interests may appear.'' Appellant cannot complain because the trial court, after an examination of the evidence, reached a different conclusion as to the extent of appellant's interest in relation to that of respondents and the business enterprise than that for which he contended.

Appellant is seemingly contending that since he *brought* the action for an accounting, he cannot *himself* be required to account in the absence of a specific cross-complaint. This is not the rule. Not only did he stipulate both before Judge Kincaid in 1957 and before Judge Smith in 1958 as to a full accounting, but even before the pretrial conferences, he was put on notice by the pleadings of the individual defendants that he was charged with having received money from the business enterprise in excess of that to which he was entitled.

The court has inherent power in an accounting action

to award full relief to all parties. The principle is well set forth in 1 California Jurisprudence 2d 454, section 103:

"In an action for an accounting, the court not only has the power, but is required, to take into account both sides of the ledger, the debits as well as the credits. Since the action is equitable in nature, a plaintiff may be required to do equity and credit the defendant with anything that may be found to be due him. Under the principle that wherever equity assumes jurisdiction it will award full relief, an action for accounting may constitute an exception to the general rule in equity that affirmative relief will not be granted a defendant unless he asks for it by cross bill or counterclaim."

As stated in *Scott* v. *Staggs*, 129 Cal.App.2d 54 [276 P.2d 605] at page 59:

"It is clear that where the plaintiff compels an accounting he is not in a position to complain of the results thereof where it is arrived at lawfully. (*Vierra* v. *Fontes*, 135 Cal. 126 [66 P. 241].)"

Rule 8.8 of Rules Relating to Pretrial Conferences supersedes former pleadings and frames the issues of the case. The pretrial conference order filed on July 16, 1958, incorporated by reference the accounting of William Deely which was attached to said order. It was stipulated to be correct except where specifically questioned (i.e. the first six issues framed in the order). The issues involving appellant's accountability to the business stipulated in the pretrial order and by subsequent stipulations of issues during the trial were, in part, the issues upon which the entire trial was actually held.

Appellant further asserts that the court erred in awarding 6 per cent interest on the capital contributions made to the corporation by respondents Gritton. As to the interest, that was expressly framed as issue number 5, by stipulation of the parties. The trial court found in Findings of Fact V that:

"V

"As to issue number 5, the Court finds that it is true that the audit of William Deeley shows a credit to Lynn Gritton for interest at the rate of 6% on the outstanding balance due him for capital contributed, and in that connection, the Court finds that it is true that all of the parties to this action agreed that said Lynn Gritton was to receive 6% interest on his net capital contributions outstanding, and in addition thereto the Court finds that it is true that said Lynn Gritton is entitled to receive interest upon his said capital contribu-

tions. That it is true that the amount of said interest to which said Lynn Gritton is entitled is the sum of $13,673.46 to and including June 30, 1958, together with 6% interest on $21,764.12 from said date to the date of this judgment.''

As heretofore indicated, the rule is well established that where the appeal is upon the judgment roll, the recitals in the judgment and the findings of fact are deemed to be true and binding upon this court. (*Ferl* v. *Ferl, supra,* 135 Cal.App. 2d 458, 462 [287 P.2d 514].)

Lastly, appellant asserts error and challenges the right of the trial court to award $5,469.63 to Joseph Shane. Appellant's position is that Mr. Shane ''was nothing more or less than attorney for the defendants Gritton.'' An examination of the various pleadings in the record discloses that Mr. Shane was attorney for respondent corporation, the Meadowbrook Investment Company.

According to the pretrial conference order filed on November 29, 1957, the pertinent provisions of which were set forth heretofore, it was stipulated that Joseph Shane would perform various services (i.e., make arrangements for the accounting; receive all moneys due and payable to respondent corporation; collect the records; collect and hold all monies from the contract holders; and have authority to pay the accountant a reasonable fee on account of his accounting services rendered).

It is apparent that Shane was not only a creditor of the respondent corporation (as its attorney), but he was also acting as an officer of the court in managing the business pursuant to the aforementioned stipulated order of Judge Kincaid made more than a year before the trial commenced. In both capacities, he had a right to reasonable compensation.

Appellant seems to ignore section 4654 of the Corporations Code, the pertinent portion of which reads as follows:

''The superior court . . . may make such orders for winding up and dissolution of the corporation as justice and equity require, *including orders providing for the presentation of claims of creditors. . . .*'' (Emphasis added.)

According to the pretrial conference order filed on July 16, 1958, Issue Number 9 dealt specifically with *''the obligations, if any, owed to Mr. Shane. . . .''* (Emphasis added.)

In the conclusions of law filed December 17, 1958, it is provided:

''V

''That pursuant to the accounting had herein, judgment should be entered directing that Joseph Shane who has been

acting as depositary of the funds of the parties, distribute the sum of $22,666.60 in his possession, being the assets of the parties, as follows:

"(a) To the Security-First National Bank of Los Angeles the sum of $4,842.63;

"(b) To William Deeley, the accountant, the sum of $1332.50;

"(c) To Joseph Shane, attorney, the sum of $5,469.63;

"(d) . . . . . . . . . . . ,"

The judgment filed December 17, 1958, provides in pertinent part:

"V

" . . . . . . . . . . . . .

"(c) To Joseph Shane, attorney, the sum of $5,469.63 for professional services rendered through August 4, 1958."

Appellant's position that the fees were awarded as a judgment *against him* to Mr. Shane as the attorney for the successful party in a lawsuit is not warranted from an examination of the record. The decision in *Hornaday* v. *Hornaday,* 95 Cal. App.2d 384 [213 P.2d 91], is not in point. The amount is payable to Mr. Shane as creditor, not by appellant, but from the assets as the business enterprise is wound up and distributed under the supervision of the trial court.

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.